Walter RUMAN, and all others similarly situated, Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE, Commonwealth of Pennsylvania, Department of Revenue, Bureau of State Lotteries, Milton Lopus, Secretary of Revenue of the Commonwealth of Pennsylvania, and Lynn R. Nelson, Executive Director, Bureau of State Lotteries, Defendants.

Civ. A. No. 77–814.

United States District Court,
M. D. Pennsylvania.

Jan. 8, 1979.

Neil J. Rovner, Hurwitz, Klein, Benjamin & Angino, Harrisburg, Pa., for plaintiffs.

Joseph W. McGuire, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Walter Ruman, a citizen of Ohio, has brought this action against the Pennsylvania Department of Revenue, the Bureau of State Lotteries of the Pennsylvania Department of Revenue, Milton Lopus, the Pennsylvania Secretary of Revenue, and Lynn R. Nelson, Executive Director of the Bureau of State Lotteries for the Pennsylvania Department of Revenue alleging that his winning ticket in the Big Fifty Bonus Lottery No. 3 entitled him to a Winnebago Elandan II motor home worth approximately $29,000 and that instead the Defendants offered him a Winnebago Brave motor home with an approximate value of $13,000.

An amended complaint was filed on October 27, 1977 and all of the Defendants have moved to dismiss the amended complaint. All briefs having been filed and oral argument having been held, the matter is now ripe for disposition. For the reasons which follow, the motions to dismiss will be granted.

The Bureau of State Lotteries was created by the "State Lottery Law", Act of August 26, 1971, P.L. 351, and the bureau is contained within the Pennsylvania Department of Revenue. The Defendants established a Big Fifty Bonus Lottery No. 3, which was operated and administered by Defendants Lopus and Nelson, with prizes to be paid from the State Lottery Fund. It is averred that this fund, created by Section 12 of the State Lottery Law, is independent of the general funds of the Commonwealth of Pennsylvania. It is further averred that the Defendants, through their agents and servants offered tickets in the Big Fifty Bonus Lottery No. 3 representing pictorially as a prize a Winnebago Elandan II motor home valued at approximately $29,000.

Walter Ruman was one of the winners of the Big Fifty Bonus Lottery No. 3. He was informed by agents and servants of the Defendants, Pennsylvania Department of Revenue and Bureau of State Lotteries, Milton Lopus and Lynn K. Nelson, that he would be offered a Winnebago Brave motor home as his prize. The Winnebago Brave is alleged to have a value of approximately $13,000. In failing to award the Elandan II motor home, the Defendants are alleged to have breached their contract with the Plaintiff and to have deprived the Plaintiff of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

The amended complaint is divided into four "claims". The first claim is a diversity action in assumpsit with jurisdiction based upon 28 U.S.C. § 1332, the second claim is brought pursuant to 42 U.S.C. § 1983 with jurisdiction based upon 28 U.S.C. § 1343, the third claim asks for an injunction and seeks to enjoin the Defendants from paying into the State Lottery Fund or otherwise making unavailable to the Plaintiff an amount of money sufficient to satisfy his claim and claims of other potential class members pending the outcome of this litigation. The complaint further alleges in claim four that the Defendants violated the Pennsylvania Unfair Trade Practice and Consumer Protection Law of November 24, 1976, P.L. 1166, as amended, 73 P.S. § 201–2(4)(vii), (ix) and (xvii). The amended complaint is prefaced by certain class allegations which are based upon diversity of citizenship under 28 U.S.C. § 1332. A class action determination was stayed by an order of Court dated November 22, 1977, pending resolution of the motions to dismiss.

The assumpsit claim alleges that Walter Ruman, relying upon the representation on the tickets of the Big Fifty Bonus Lottery No. 3, purchased a ticket for the March 2, 1977 drawing for $.50 (fifty cents). Plaintiff Walter Ruman's Bonus Ticket Number 716180 was selected as a winning number in the drawing of March 2, 1977. He made a claim for the Winnebago Elandan II motor home he believes was the prize he won within the prescribed time and in the prescribed manner as set forth in the state lottery law. He was not awarded the Win-

nebago Elandan II motor home he avers was advertised by Defendants, but instead was offered a Winnebago Brave of lesser value. He asks for judgment in an amount representing the difference in value between a Winnebago Elandan II and a Winnebago Brave, or in the alternative for the award of a Winnebago Elandan II motor home.

Claim two avers that the Defendants under color of state law have caused Plaintiff to be subjected to a deprivation of his rights to be secure in his property in violation of 42 U.S.C. § 1983 and asks for the same damages as in claim one.

As we stated above, claim three is for an injunction to preserve a fund from which damages could be awarded if found to be warranted.

The fourth claim alleges that the Defendants caused advertisements to appear on the face of Big Fifty Bonus Lottery No. 3 tickets and in other documentary material representing a Winnebago II motor home, and that members of the general public as well as the Plaintiff and members of his putative class were mislead into believing the Elandan II model of motor home would be awarded as a prize in the Big Fifty Bonus Lottery No. 3. The Defendants are alleged to have intended to award to prize winners only a Winnebago Brave motor home of substantially lesser value than the Winnebago Elandan II motor home, and the Defendants are therefore alleged to be in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Plaintiff asks for treble damages on this claim as provided by the statute. Act of December 17, 1968, P.L. 1224, § 9.2 as amended, 73 P.S. § 201–9.2.

The dispute revolves around the fact that the back of the lottery ticket states:

"On the drawing date printed on your ticket a 6-digit number will be drawn. Match the number with one of the numbers on your bonus game ticket and *win the prize shown on the front of the ticket.* Claim your prize at any official winner validation center (State Liquor Store). Detach left hand portion of ticket when claiming bonus prizes. Tickets may be eligible for bonus prizes as well as weekly cash prizes.

IMPORTANT: This ticket is valid only for drawing date shown. Prizes must be claimed by dates to be announced. *Determination of winners is subject to the rules and regulations of the Pennsylvania Bureau of State Lotteries, Department of Revenue.*" (emphasis supplied).

The Plaintiff claims the front of the ticket depicts a $29,000 Winnebago whereas the Defendants' position is that whether or not the front of the ticket shows the more expensive Winnebago, which they deny, the language on the back of the ticket indicates that "Determination of winners is subject to the rules and regulations of the Pennsylvania Bureau of State Lotteries, Department of Revenue," and the regulations published in the Pennsylvania Bulletin indicated that the prize was to be the less expensive Winnebago.

■ For the purposes of a motion to dismiss the Court must accept as true all well-pleaded allegations contained in the complaint and must construe them in the light most favorable to Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Helstocki v. Goldstein,* 552 F.2d 564 (3d Cir. 1977).

■ If the essence of an action involves recovery of funds which must be paid from the state treasury, the state is the real party in interest and is entitled to invoke its Eleventh Amendment immunity. *Farr v. Chesney,* 441 F.Supp. 127 (M.D.Pa.1977). The Plaintiff argues that the recovery in this case will not be paid from the public treasury, but rather will come from a separate and distinct fund or will have only an ancillary effect on the state treasury and therefore the Eleventh Amendment is no impediment to this suit. The Plaintiff argues that the state has established what is in effect a business similar to private businesses.

■ The powers and legal form, and the functional autonomy and extent of independent financing of the entity in question, as defined by applicable state law, are crucial

to the Eleventh Amendment's application. *Unified School District No. 480 v. Epperson*, 551 F.2d 254 (10th Cir. 1977). The Pennsylvania State Lottery Law, Act of August 26, 1971, P.L. 351, as amended, 72 P.S. § 3761–1 et seq., provides in pertinent part:

"All monies received from the operation of the State lottery shall be deposited in a State Lottery Fund which is hereby created." 72 P.S. § 3761–12.

Pursuant to the State Lottery Law the State Lottery Fund was originally created and funded by a one million dollar appropriation from the state's general fund, and pursuant to Section 12(b)(4) of the State Lottery Law, that appropriation was repaid to the general fund by June 30, 1972. Section 12 of the Pennsylvania Lottery Law also provides that not less than forty per cent of the amount received from the operation of the State Lottery is to be used for the payment of lottery prizes. Pursuant to Section 6(a)(11)(iv) not less than thirty percent of the revenues accruing from the sale of lottery tickets is dedicated to aiding the financing of the Senior Citizens Property Tax Assistance Act, Act of March 11, 1971, P.L. 104, as amended, 72 P.S. § 4751–1 et seq., and the Pennsylvania Urban Mass Transportation Assistance Law, Act of January 22, 1968, P.L. 42, as amended, 66 P.S. § 1951 et seq. Therefore some 30% of the revenues which are available go to meet the operational costs of the lottery.

In *Transamerica Insurance Co. v. Judie, Inc.*, 30 Pa.Cmwlth. 259, 373 A.2d 478 (1977) the Pennsylvania Commonwealth Court held that the Bureau of State Lotteries was an integral part of the Commonwealth, in view of the fact that the Bureau itself did not make the necessary rules and regulations for its own government, but rather the Pennsylvania Secretary of Revenue was given such authority and in view of the fact that the Bureau's development was financed by the Pennsylvania Legislature and any shortage of funds needed to meet the Bureau's statutory obligations was to be appropriated from the state's general fund. Section 4 of the State Lottery Law specifically states that the Bureau is created "within the Department of Revenue". 72 P.S. § 3761–4. Section 6 of the law places

upon the Pennsylvania Secretary of Revenue the duty of administering the lottery. 72 P.S. § 3761–6. As stated in *Transamerica*, the Pennsylvania Secretary of Revenue has "the power to establish the type of lottery to be conducted, the prices of tickets, the prizes to be awarded and the power to regulate the licensing of agents for the sale of tickets." 373 A.2d at 480. Although the State Lottery Fund is not coextensive with the general fund, the money in the State Lottery Fund belongs to the state.

A waiver of the Commonwealth's Eleventh Amendment immunity must be found in a clear declaration of a state's intention, and the Pennsylvania General Assembly has established a Board of Arbitration of Claims having original jurisdiction to hear claims arising out of contracts entered into by the Commonwealth. Act of May 20, 1937, P.L. 728, No. 193, as amended, 72 P.S. § 4651–1 et seq. This limited waiver of immunity in contract actions has now been supplemented by the Act of September 28, 1978, Act No. 78–152 relating to certain tort actions, however none of this legislation specifically waives Eleventh Amendment immunity in federal courts. In fact, Act No. 78–152 provides in Section 5(e) that "Nothing contained in this Act shall be construed to waive the Commonwealth's immunity from suit in federal courts guaranteed by the eleventh amendment to the United States Constitution."

The assumpsit action based upon diversity of citizenship is barred by the Eleventh Amendment. The state is not a citizen for purposes of federal diversity jurisdiction. *Litton RCS, Inc. v. Pennsylvania Turnpike Commission*, 376 F.Supp. 579 (E.D.Pa.1974), and the Commonwealth of Pennsylvania, the Department of Revenue, and the Bureau of State Lotteries are all integral parts of the Commonwealth. The naming of Milton Lopus as Secretary of Revenue of the Commonwealth of Pennsylvania and Lynn R. Nelson as Executive Director of the Bureau of State Lotteries does not change the fact that an action in assumpsit is necessarily one against these persons in their official capacities as any

contract was not with these men individually. A judgment would come from Bureau funds and therefore is barred by the Eleventh Amendment.

 The action pursuant to 42 U.S.C. § 1983 raises a slightly different Eleventh Amendment problem. As stated in *Bagby v. Beal,* 455 F.Supp. 881 (1978, M.D.Pa., per Muir, J.) monetary relief may not be had against a state which has not waived its Eleventh Amendment immunity absent at least a specific statement of Congressional intent to permit such awards. See, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) rejected the argument that 42 U.S.C. § 1983 was intended to create a waiver of the states' Eleventh Amendment immunity. This has not been changed by the two recent United States Supreme Court decisions in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) or *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

 *Monell* held local governments were intended to be included among the "persons" to which § 1983 applies and that local government bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. It was specifically stated in *Monell* that the holding was limited to local government units which are not considered part of the state for Eleventh Amendment purposes. It has long been established that while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 667, n. 12, 94 S.Ct. 1347, 1357, n. 12, 39 L.Ed.2d 662, 675, n. 12 (1974).

*Hutto v. Finney, supra,* held that the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988 authorized the award of attorneys' fees against public officials in their official capacities to be paid out of the state treasury because the act imposes attorneys' fees as part of the costs of litigation. The Court stated that an award of costs has traditionally been made without regard to the Eleventh Amendment immunity of the states and that it was permissible for Congress to amend its definition of taxable costs and have the amended class of costs applied to the states without expressly stating that it intended to abrogate the state's Eleventh Amendment immunity.

 Prior to Act No. 78–152 relating to tort actions against the Commonwealth, the Pennsylvania Supreme Court held in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), that the sovereign immunity of the Commonwealth of Pennsylvania was not a bar to a tort action filed in state court by a plaintiff who alleged he was injured by the negligent maintenance of a legislative route by the Pennsylvania Department of Highways. Neither the common law concept of sovereign immunity nor Article I, Section 11 of the Constitution of Pennsylvania was a bar to the suit. The Eleventh Amendment to the United States Constitution was mentioned briefly in the opinion pointing out that the Pennsylvania Legislature failed to ratify the Eleventh Amendment proposed by Congress. We do not believe the *Mayle* decision can be construed as holding that the Commonwealth of Pennsylvania has consented to awards of damages against it in a federal court in actions brought pursuant to 42 U.S.C. § 1983. The law in at least three circuits holds that a state's consent to be sued in its own courts is not necessarily a waiver of its Eleventh Amendment immunity. See, *Richins v. Industrial Construction, Inc.,* 502 F.2d 1051 (10th Cir. 1974); *Scott v. Board of Supervisors,* 336 F.2d 557 (5th Cir. 1964); *Markham v. City of Newport News,* 292 F.2d 711 (4th Cir. 1961); see also, *S. J. Groves & Sons Co. v. New Jersey Turnpike Authority,* 268 F.Supp. 568 (D.N.J.1967). The Third Circuit Court of Appeals has recognized a distinction between sovereign immunity and the immunity which exists under the Eleventh Amendment. See, *O'Neill v. Pennsylvania,* 459 F.2d 1, 2 (3d Cir. 1972). In *Daye*

*v. Pennsylvania,* 483 F.2d 294 (3d Cir. 1973), *cert. denied* 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974), the Third Circuit Court of Appeals stated that although a state may waive its Eleventh Amendment immunity, the conclusion by a court that there has been a waiver will not be lightly inferred and when a waiver does take place it must be clear and unequivocal. The opinion of the Pennsylvania Supreme Court in *Mayle* was not such a clear and unequivocal statement.

As we stated earlier in dismissing the diversity suit, we believe that Milton Lopus as Secretary of Revenue, and Lynn R. Nelson, as Executive Director of the Bureau of State Lotteries have been named as nominal parties in what is essentially a breach of contract claim against the Commonwealth, and therefore we shall dismiss the § 1983 claim against Lopus and Nelson as well.

Even if the individual Defendants were not immune from suit under the Eleventh Amendment, we do not believe the complaint adequately alleges a property interest of which the Plaintiff has been deprived. We must look to the nature of the alleged interest to see if it is within the Fourteenth Amendment's protection of life, liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The property interests protected are not created by the Constitution, but rather are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. See, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

The Defendants argue that Plaintiff was not deprived of a property interest because he had no legitimate claim of entitlement. On January 17, 1977 Secretary Lopus adopted and published amendments to Chapter 28 of the Bureau's Rules and Regulations relating to Big Fifty Bonus Game Number 3, the game at issue in this case. Section (4)(a) of those amendments established the value of the prize to be awarded in this lottery game at approximately $13,000. 7 Pa. Bulletin 254.255 (January 29, 1977). That section provides:

"Owners of tickets with the 6-digit number appearing on the stub under the caption 'Match either number below—win a Winnebago' matching the 6-digit number drawn shall be awarded a 1977 Winnebago Motor Home plus $2,734.25 cash for a total prize of $13,674.25."

The Plaintiff states in his complaint that he was in fact offered this prize. A misrepresentation or incorrect description of government benefits does not vest in a person an enforceable legal or equitable right to the misrepresented benefits. See, *Pennsylvania Association of State Mental Hospital Physicians v. State Employee's Retirement Board,* 31 Pa.Cmwlth. 151, 375 A.2d 863 (1977).

Even if a Plaintiff alleges facts sufficient to show a deprivation of a property interest if he was afforded all the process which the Constitution requires then he has not stated a cause of action. The United States Constitution, rather than state law, defines what process is due. See, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Bagby v. Beal,* 439 F.Supp. 1257, 1261 (M.D.Pa.1977). Minimum requirements of due process generally are notice of the basis for governmental action and an opportunity to be heard. See, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Even if Plaintiff's claim of a deprivation of property was considered established, he does not assert that he has been deprived of his property without a hearing, and one is provided for pursuant the Act of May 20, 1937, P.L. 728, No. 193, as amended, 72 P.S. § 4651–1 et seq., with the Pennsylvania Board of Arbitration of Claims. Furthermore, what the complaint basically alleges is a breach of contract, and were we to adopt Plaintiff's theory of action pursuant to 42 U.S.C. § 1983, anytime Commonwealth officials were alleged to have breached a contract a Plaintiff would have an action in federal court for deprivation of property without due process of law. We do not believe this was

the intention of the civil rights statute, especially when a state procedure for determining such a dispute exists.

A violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, §§ 2(4)(vii), (ix) and xvii), 73 P.S. § 201–2(4)(vii, ix, and xvii) does not give rise to an action under 42 U.S.C. § 1983 as it is a state law claim involving no federally secured right. See, *Nationwide Amusements, Inc. v. Nattin,* 325 F.Supp. 95 (W.D. La.1971).

To enable this Court to exercise pendent jurisdiction over an assumpsit claim or the state unfair trade practice action, if it was applicable to this situation, the Plaintiff would have to raise a substantial federal claim involving a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As we are dismissing the federal claims, in the exercise of our discretion we shall dismiss the pendent state claims as well. As we are dismissing this case there is no need to proceed with Plaintiff's request for a class action or for an injunction ordering certain funds to be held by the Bureau of State Lotteries to pay a possible judgment in this case.