**REGENCY CATERING SERVICES, INC., Plaintiff,**

v.

**The CITY OF WILKES–BARRE, The City of Wilkes-Barre Board of Health, and Thomas V. McGlaughlin, Mayor of the City of Wilkes-Barre, Defendants.**

Civ. No. 85–1126.

United States District Court, M.D. Pennsylvania.

Dec. 6, 1985.

John E. O'Connor, Joseph D. Burke, Kingston, Pa., for plaintiff.

Donald Brobst, Robert D. Schaub, Wilkes-Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here Defendants' motion to dismiss this suit for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). As a general rule, courts do not favor the summary disposition of cases on their merits. In fact, " ... a complaint should not be dismissed ... unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, in the face of such a motion all well-pleaded allegations are taken as true and all inferences drawn in favor of the non-moving party. See *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Hochman v. Board of Education of the City of Newark,* 534 F.2d 1094 (3d Cir.1976).

### Factual Background

Crediting, as we must, the Plaintiff's version of the facts which precipitated this lawsuit, we shall take as true the allegations in Plaintiff's brief in opposition to this motion.[1] These allegations state that Henry Radulski, a sanitarian employed by the City of Wilkes-Barre's Board of Health, visited Plaintiff's business premises, then a thriving enterprise, on eight occasions in the winter and early spring of 1985. These visits were to monitor Plaintiff's progress at eliminating a purported infestation of mice there. It is alleged that, despite Plaintiff's utter compliance with the recommendations made by Mr. Radulski and his agency, John O. Turner, the chairman of said agency, divulged the fact that a local food establishment was afflicted by a mouse problem at a public meeting on February 26, 1985. Although Mr. Turner did

---

1. See Docket Item 8 at pages 2 and 3.

not mention the establishment by name, the interest of the local press was so piqued that much pressure was brought to bear on Wilkes-Barre City officials to identify which food establishment had this dreaded problem. These officials, including Mayor Thomas McGlaughlin, then allegedly bowed to media pressure and divulged Plaintiff's name by way of a formal press release.

This constituted a reversal of a long-standing policy and custom of the Wilkes-Barre Board of Health that inspection reports based on the existence of unacceptable sanitary conditions would not be made public unless the establishment in question refused to take remedial measures as prescribed by the Board and was ultimately cited for health code violations—things that did not occur in the instant case. The effect of the public dissemination of this information was nothing less than the virtual destruction of Plaintiff's business due to the cancellation of previously contracted for catering engagements.

### Legal Argument

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, the federal statute which provides a means of redress to those parties whose federally protected rights are violated by persons acting under color of state law. Clearly, there are various concepts embodied in this statute which must be present in order to state a viable claim under it. Although there seems to be some wrangling over the issue whether a corporate entity is a "person" as contemplated by the drafters of 42 U.S.C. § 1983, we think it well-settled that a corporation can assert a claim thereunder. See *Watchtower Bible and Tract Society, Inc. v. Los Angeles County, et al.*, 181 F.2d 739 (9th Cir.1950); also, *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir.1978), *certiorari denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Similarly, it seems clear that state political subdivisions—including cities—and their officers are acting "under color of state law" when they exhibit misconduct while carrying out the responsibilities of their offices. See *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

More problematic is the issue whether, under the facts alleged here, a deprivation of some federally protected right has occurred. The Plaintiff claims that two of its federally protected rights have been violated. The first of these is Plaintiff's "right to confidentiality" as explained in *Fadjo v. Coon*, 633 F. 2d 1172, 1175 (5th Cir.1981), which is really an extension of the right to "zones of privacy" first discussed in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and later amplified in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The second federally protected right which Plaintiff claims has been violated is its right to due process of law (notice and an opportunity to be heard) before being deprived of its property—in this sense, presumably, its reputation in the community and resultant loss of future business—as guaranteed by the 14th Amendment.[2] We shall consider these claims separately.

### Right to "Confidentiality"

■ Fifth Circuit cases [*Fadjo v. Coon*, supra, and *Plante v. Gonzalez*, 575 F.2d 1119 (1978)] cited by Plaintiff state that there is an " ... individual interest in avoiding disclosure of personal matters ..." and that this is "the right to confidentiality". See *Fadjo* at 1175 citing *Plante*, supra at 1132. Both *Fadjo* and *Plante* cite *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), which discusses the existence of a privacy interest in avoiding disclosure of *personal* matters including *personal* finances to archivists engaged in screening presidential papers. We have underscored "personal" twice in the previous sentence because, it seems to this Court, that this right to confidentiality as it derives from the more well-known right of privacy discussed in a long line of Supreme

---

2. Plaintiff's filing is less than clear as to what "property" it lost.

Court decisions [3] is peculiarly a *personal* right. While we do not dispute Plaintiff's assertion that a corporation is a person for purposes of coming within the ambit of § 1983, we think that there is a very different set of criteria which must be referenced to determine if any corporation can come within the confidentiality aspect of the right to personal privacy discussed in *Fadjo* and *Plante.*

*Fadjo* concerned revelations about "the most private details" of Mr. Fadjo's life. *Plante* concerned whether individual Florida legislators had to make full disclosure of *personal* finances pursuant to Florida's Sunshine Amendment. The various cases enumerated in footnote 3 below all concern intensely personal aspects of the private lives of *individuals*—such things as whether to marry, procreate, use contraceptives, obtain an abortion, etc. This Court does not think that there is any case which has held that a corporation can claim relief under this very personal right to privacy/confidentiality. The Plaintiff herein certainly has not cited any. We think it would be inappropriate to extend this right of privacy which has, heretofore, been conferred only upon natural persons to a mere business entity. Thus, we find that Plaintiff corporation enjoyed no federally protected right to privacy and/or confidentiality. This issue, consequently, is no longer a feature of this case.

### Due Process Claim

■ Paragraph 18 of the Plaintiff's complaint states:

The Defendants' actions subjected the Plaintiff to the deprivation by the Defendants, under color of law, and of the policies, customs and practices of the City of Wilkes-Barre Board of Health, rights secured to it by the Constitution of the United States and the Constitution and statutes of the Commonwealth of Pennsylvania, including but not limited to deprivation of Plaintiff's right to privacy, *deprivation of Plaintiff's right to due process, and deprivation of Plaintiff's right to possess property.* (emphasis ours).

It is curious that the emphasized portion of the paragraph above seems to separate due process and the "right to possess property" into distinct elements and, seemingly, separate claims. The 14th Amendment proscribes any act whereby a state would " . . . deprive any person of life, liberty, or property, without due process of law. . . ." Thus, it seems to this Court, that there is no free-floating right to due process but that said right only exists in relation to what a state can take from a person. Since, as was previously noted, we must draw all inferences in favor of the non-moving party when ruling upon a motion to dismiss, we now infer that Plaintiff actually claims that it was deprived of property without due process of law.[4]

Defendants have responded that the state did not take anything from Plaintiff in the literal sense. Rather, these state actors merely disseminated information, the truth of which is not contested here, which had the impact of deleteriously affecting Plaintiff's business. Thus, the public elected not to patronize Plaintiff due to the resultant diminution of its reputation or loss of goodwill.

Defendants then cite *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976),[5] a case in which charges against an accused shoplifter had been dismissed only after the arrestee's name and picture had been widely publicized in an array of "ac-

---

**3.** See *Griswold,* supra; *Roe,* supra; *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

**4.** In Plaintiff's brief in opposition to this motion there is no mention of a property interest and

Plaintiff seems to be basing its claim on a deprivation of liberty (privacy). Since we have already found that Plaintiff enjoyed no such liberty interest, we shall assume that Plaintiff had not wished to abandon its "deprivation of property" claim.

**5.** Plaintiff did not attempt to undercut *Paul v. Davis,* in its brief.

tive shoplifters" provided by police to local merchants, for the proposition that " ... the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law". *Paul,* supra at 712, 96 S.Ct. at 1166. If the damage to Mr. Davis' reputation by these unfounded allegations of *criminal* conduct did not implicate a property interest, it is hard to see how the uncontested allegations of an unsanitary condition herein can amount to the violation of a federally protected right.

Nevertheless, our reading of *Paul v. Davis,* supra, indicates that that case does not simply stand for the blanket proposition that reputation does not equal property. *Paul v. Davis* also includes another concept, to wit:

> While we have ... pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, *apart from some more tangible interests such as employment,* is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause. (emphasis ours). *Paul v. Davis* at 701, 96 S.Ct. at 1160–61.

This brings us to an interesting question. If certain statements by government officials can be so "stigmatizing" as to deprive an *individual* of future employment opportunity and thus result in a violation of due process,[6] can it also be said that similar government conduct can have such a devastating effect on a *corporation's* ability to do business as to constitute a violation of due process?

The pleadings must be more complete to properly address the question alluded to above. The claim is somewhat novel and unlike controversies we typically decide under the ambit of § 1983. We are, at this juncture, more impressed with its creativity than with its durability. Yet, as previously stated, we cannot grant a motion to dismiss

pursuant to Rule 12(b)(6) unless it appears certain that a plaintiff can assert no facts in support of its claim which would entitle it to relief. See *Conley v. Gibson,* supra. We lack such certainty at this time and we shall await further filings by the parties.

---

6.  See *McKnight v. SEPTA,* 583 F.2d 1229, 1236 (3d Cir.1978). Also, *Truhe v. Rupell, et al.,* 641

F.Supp. 57 (Judge Rambo, M.D.Pa.1985).