**SWIN RESOURCE SYSTEMS, INC., Plaintiff,**

**v.**

**LYCOMING COUNTY, PENNSYLVANIA, acting Through the LYCOMING COUNTY SOLID WASTE DEPARTMENT: Wilt, Dolly M.; and Smith, Gene; and Morningstar, Lora P.; all in their respective official capacities as Commissioners of Lycoming County, PA and in each of their individual capacities; and Alexander, Wayne I., in his official capacity as General Manager of Solid Waste Facilities of the Lycoming Cty. Solid Waste Dept., Defendants.**

**Civ. No. 87–1565.**

United States District Court, M.D. Pennsylvania.

Feb. 10, 1988.

John P. Krill, Jr., Carleton O. Strouss, Kirkpatrick & Lockhart, Harrisburg, Pa., Richard A. Gahr, Kieser & Gahr, Williamsport, Pa., for plaintiff.

J. David Smith, McCormick, Reeder, Nichols, Sarno, Bahl, & Knecht, Williamsport, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

The Defendants herein are the County of Lycoming, the present Commissioners of the County, and the manager of the Lycoming County Solid Waste Department. The County is a political subdivision of the Commonwealth of Pennsylvania and operates a landfill in Lycoming County, through the Lycoming County Solid Waste Department. The landfill is situated on lands owned by the United States Bureau of Prisons and is operated under a permit granted to the County by the Bureau of Prisons.

The Plaintiff owns and operates a municipal solid waste processing facility in Hemlock Township, Columbia County, Pennsylvania. The Swin facility receives municipal solid waste from New Jersey and Eastern Pennsylvania. It separates tires, wood pallets, appliances and cardboard from other solid wastes. The items separated out are sold and shipped to businesses in Pennsylvania, other states, and other countries which have a commercial need for them. The solid waste which is not recycled is compacted into 40 inch by 30 inch by 60 inch bales in preparation for shipment to landfills. These bales are transported to duly permitted landfills such as the landfill operated by the named Defendants.

By this action the Plaintiff seeks to enjoin the Defendants from imposing on it volume restrictions, and increased rates for disposal at the landfill. The increased rates were made effective by the Defendants as of September 14, 1987 and the Plaintiff argues these increased rates effectively prevent it from using the landfill.

The matter is presently before us on a motion to dismiss filed on behalf of all Defendants. The motion has been fully briefed and is ripe for disposition. Because we find no basis for federal court jurisdiction, we will grant the motion to dismiss.

## I

The parameters of the motion are best outlined by referring to the arguments made by the Plaintiff against the motion to dismiss; they are as follows:

A. The imposition by the Defendants of arbitrary volume restrictions and discriminatory disposal fees violated the Commerce Clause of the United States Constitution.

B. Swin has an enforceable long-term contract with Defendants.

C. Swin has a "property right" for due process purposes and thus may pursue its Section 1983 claim.

D. Charging a prohibitively high rate to Swin violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

E. Swin may bring an action pursuant to 43 U.S.C. § 931(c) and need not join the United States as an indispensable party.

In considering a motion to dismiss we accept as true all well-pleaded allegations and draw all inferences in favor of the non-moving party. We are cognizant, too, of the directions of guiding law which holds that a complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Regency Catering Services v. City of Wilkes-Barre*, 640 F.Supp. 29 (M.D.Pa.1985). In reaching our decision in this case we have in fact given to the Plaintiff the benefit of all reasonable inferences that can be drawn from the pleadings and, indeed, there is no dispute concerning the operative facts underlying this case.

The Plaintiff's argument concerning the alleged interference with interstate commerce is based on the constitutional grant of power to Congress to regulate commerce among the states. The purpose of that grant was expressed in *H.P. Hood, Inc. v. DuMond*, 336 U.S. 525, 537–38, 69 S.Ct. 657, 665, 93 L.Ed. 865 (1949):

This principle that our economic unit is the Nation, which alone has the gamut of powers necessary to control of the economy, including the vital power of erecting customs barriers against foreign compe-

tition, has as its corollary that the states are not separable economic units. As the court said in *Baldwin v. Seelig*, 294 U.S. 511, 527 [55 S.Ct. 497, 502, 79 L.Ed. 1032] "what is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation."

■ In later decisions the Supreme Court recognized that many subjects which might potentially come under federal regulation escape Congressional attention because of their local character, number and diversity. Thus in a series of cases the Supreme Court has outlined a distinction between the actions of state and local governments when they are functioning as "regulators" of the market as opposed to when they are acting as "market participants". *See Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed. 2d 220 (1976); *Reeves, Inc. v. Stake*, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980); *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); and *White v. Mass. Council of Constr. Employers*, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1982). As those cases explain, the Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the National marketplace. There is no indication of a constitutional plan to limit the ability of the states themselves to operate uninhibited in the free market. Restraint of federal jurisdiction is counseled in these cases by considerations of state sovereignty, the role of each state as the guardian and trustee for its people and the long recognized right of trader or manufacturer engaged in an entirely private business freely to exercise his own independent discretion as to parties with whom he will deal. Thus the courts have found that

there is nothing in the purposes animating the Commerce Clause of the United States Constitution that prohibits a state (or a state agency) in the absence of specific Congressional action, from participating in the market and exercising the right to favor its own citizens over others.

■ Here, we find no effort by the Defendant agency to regulate or to tax the general operation of landfills. Rather, the actions alleged in the complaint perfectly describe a participant in the landfill market. A participant which has made certain determinations concerning its own competitiveness in the market as well as decisions to conserve its own resources. These are common decisions by market participants and have no bearing on the same determinations by others in the same market.

We find under the *Hughes*, *Reeves*, *White* and *Philadelphia* cases that Defendants' argument is compelling and there is no basis on which we could ascribe the restrictions of the Commerce Clause to this case.[1]

## II

In arguing its due process claim, the Plaintiff alleges "it is a fundamental principle that valid contractual rights against a government body, both explicit and implicit, create property interests within the scope of the due process clause." The Plaintiff cites *Northern Pennsylvania Legal Services, Inc. v. The County of Lackawanna*, 513 F.Supp. 678 (M.D.Pa.1981) and other cases cited therein for the proposition that such a due process right allows them to pursue a claim against the Defendants under the Civil Rights Act of 1871 which is now 42 U.S.C. § 1983.

---

1. In his most recent writing on Constitutional law, Professor Lawrence H. Tribe, summarized the matter here as follows:

> Yet from another perspective, *Alexandria Scrap*, and its progeny, can be seen as ushering in a new day for federalism, one that allows state and local governments the freedom to experiment with different packages of benefits for their citizens without fear that they will have to share the contents with

everyone else. Central heating is a marvelous thing, but it makes little sense in a house without walls. The market participant exception to the Commerce clause, as an aspect of the new federalism, encourages state and cities to improve the lives of their citizens by allowing the benefits they generate to be contained within their borders.

L. Tribe, *American Constitutional Law,* at 434 (2d ed. 1988).

Further reference to the *Northern Pennsylvania* case however, undermines Plaintiff's contention:

> The complainants cannot obtain a federal forum merely because the County may have breached an agreement to which they are a party. To proceed on a substantive due process theory, NPLS and its attorneys must show that the deprivation was arbitrary, capricious or without a rational basis.

■ We find here then, in regard to the due process claim, that it is clear we are presented with no more than a breach of contract assertion. The Plaintiff's attempt to clear this hurdle by stating that Defendants' actions are "arbitrary and capricious" is belied by the substantial contract dispute that exists in this matter. The Defendants, in the pleadings, have presented this Court with what appears to be a valid defense for their actions. Although we will not reach the contract issue by disposing of the claim purely on jurisdictional grounds, the pleadings themselves establish that the Defendants' were not arbitrary or capricious. Here we quickly point out that this decision does not deprive the Plaintiff of a forum for the resolution of its argument with the Defendants, since it has an adequate state law remedy. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In commenting on the impropriety of converting every breach of contract case to one in which federal jurisdiction is appropriate, the Court in *Ruman v. Com. of PA., Dept. of Revenue*, 462 F.Supp. 1355, 1361–62 (M.D.Pa.1979), stated appropriately:

> Furthermore, what the complaint basically alleges is a breach of contract, and were we to adopt Plaintiff's theory of action pursuant to 42 U.S.C. § 1983, any time Commonwealth officials were alleged to have breached a contract, a Plaintiff would have an action in federal court for deprivation of property without due process of law. We do not believe this was the intention of the Civil Rights Statute, especially when a state procedure for determining such a dispute exists.

*See also Jiminez v. Almodovar*, 650 F.2d 363 (1st Cir.1981); *Coastland Corp. v. County of Currituck*, 734 F.2d 175 (4th Cir.1984).

## III

■ Regarding the Equal Protection argument presented here, the Plaintiff claims: "charging a prohibitively high rate to Swin violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

Here, the Plaintiff makes an argument that the Defendants pricing arrangement essentially excludes "out of County waste" and results in a "hoarding of a natural resource" which it argues is impermissible under the theory of the cases cited herein regarding the impermissible conduct of states in violation of the Commerce Clause. Plaintiff's argument that the decision of the Defendants to establish a system which essentially charges higher fees to out of the area waste haulers is such a burden on the Plaintiff as to be impermissible under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. We find to the contrary, however, and find that the Defendants have indeed a rational basis for their pricing mechanism. The price arrangements have been promulgated to expand the life of the landfill and to provide facilities for the longest possible time for the residents of the Lycoming County area. Any hole, no matter how large, can only accept a specific volume of garbage, and it would be foolhardy for the operators of this landfill not to plan ahead and to use appropriate measures to extend the life of that landfill as far as possible. We find, therefore, that the Plaintiff fails to make a case which would sustain federal jurisdiction under its alleged equal protection claim.

## IV

Since we find the complaint fails to state any federal cause of action, F.R.Civ.Proc. 12(b)(6), it is not necessary for us to reach the other arguments propounded in this complaint by the Plaintiff. Presuming that some of the other claims might be con-

**1120**

sidered valid or pendent state claims, and presuming that the Plaintiff could avail itself of appropriate state forums to resolve those claims, it is proper under federal law to dismiss all of the claims in this complaint when we find no federal jurisdiction, although we do so without prejudice to the Plaintiff to restate these claims in a proper state forum. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Under the circumstances, we will dismiss this action without prejudice to the Plaintiff to reinstate its state claims in an appropriate forum if it so desired. An appropriate Order follows.