John O. VARTAN, trading as Independent American Investments, a registered fictitious name, Plaintiff,

v.

Nancy M. SOBOLEVITCH, Defendant.

Civ. A. No. 1:CV–91–1065.

United States District Court,
M.D. Pennsylvania.

Nov. 20, 1991.

Carleton O. Strouss, John P. Krill, Jr., Andrew H. Cline, Kirkpatrick & Lockhart, Harrisburg, Pa., for plaintiff.

Howard M. Holmes, Kenneth R. Wilson, Supreme Court of Pa., Administrative Office of Pa. Courts, Philadelphia, Pa., Robert J. Cindrich, Paul H. Titus, Mansmann Cindrich & Titus, Pittsburgh, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Pursuant, in part, to Fed.R.Civ.P. 12(b)(6), the defendant, Nancy M. Sobolevitch, Court Administrator of Pennsylvania and the Chief Administrative Officer of the Administrative Office of Pennsylvania Courts (AOPC), has filed a motion to dismiss the complaint. The plaintiff, John O. Vartan, trading as Independent American Investments, sued Sobolevitch under 42 U.S.C. § 1983, alleging that she violated his right to due process under the fourteenth amendment when she terminated a lease between Vartan and the AOPC without first giving him an opportunity to contest the termination.

The lease, executed on October 10, 1989, was for a courthouse intended as the home of the Pennsylvania Commonwealth Court. It was for an initial leasehold of twenty-nine years and would have required Vartan to build the courthouse in downtown Harrisburg, Pennsylvania. Plaintiff asserts that in the months following the execution of the agreement he expended great time, money and effort to advance the construction of the project, which all went to naught when Sobolevitch terminated the contract on June 6, 1990. She did so pursuant to the apparent authority the lease conferred upon her if she was not able to obtain the approval of the "judicial branch of the Commonwealth of Pennsylvania" for the lease. (complaint, exhibit D, the lease agreement). Vartan believes that Sobolevitch had, in fact, already obtained the necessary approval at the time she wrote her letter and that the termination was therefore in breach of the lease.

Among other reasons for dismissal, defendant asserts Vartan's claim is for a mere breach of contract and that such a claim is not protected by the due process clause. In opposition, the plaintiff contends that he had a property interest in the lease because Sobolevitch could not terminate it except on certain grounds. Because defendant therefore could not have terminated the lease except, as Vartan has argued, "for cause," the contract created a property right which is protected by the due process clause.

"Today it is beyond dispute that a contract with a state entity can give rise to a property right protected under the Fourteenth Amendment," *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir.1991), but, as also noted by the court of appeals in *Unger*, not "every state contract gives rise to a property interest." *Id.* Further, the Third Circuit has been reluctant to recognize such a right for a very good reason:

> Many ... courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Id.* at 1398 (quoting *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989) (citations omitted in *Unger*)).

Nevertheless, in a review of Supreme Court and federal appellate case law, the Third Circuit has acknowledged:

> two general types of contract rights that have been found to be property protected under the Fourteenth Amendment. As the Second Circuit noted in *S & D Maintenance [Co., Inc. v. Goldin*, 844 F.2d

962, 966 (2d. Cir.1988)], the first type arises where the contract confers a pro-.tected status, such as those "character-ized by a quality of either extreme de-pendence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." The second, albeit related type of proper-ty interest.arises where the contract it-self includes a provision that the state entity can terminate the contract only for cause.

928 F.2d at 1399 (brackets added).

■ Vartan asserts that his lease was of the second type. Although he concedes that the lease did not specify that it could be terminated only for cause, he contends its substantive provisions, permitting termi-nation only on the happening of certain events, had that effect. Hence, the con-tract did create a property right which he further asserts required a pretermination hearing before the agreement could be end-ed.

Whether the contract creates a property right is a difficult question. It appears that *Farr v. Chesney*, 437 F.Supp. 521 (M.D.Pa.1977) would support such a conclu-sion, but it was decided prior to the Third Circuit's decision in *Unger* so we are not inclined to follow *Farr*. In any event, that case is distinguishable because a contract to provide personal services was at issue there. *See San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1409 n. 5 (9th Cir.1987). Other cases from this dis-trict would support the opposite conclusion but they are distinguishable as well. In *Ruman v. Commonwealth of Pennsylva-nia, Department of Revenue*, 462 F.Supp. 1355 (M.D.Pa.1979), the court stated that a mere breach of contract could not consti-tute a due process violation but no argu-ment was made there that the contract could not be terminated except for cause. In *Swin Resource Systems, Inc. v. Lycom-ing County*, 678 F.Supp. 1116 (M.D.Pa. 1988), the plaintiff advanced a substantive due process claim.

However, we need not decide this issue. Assuming that the contract does create a property right, due process does not re-quire the pretermination hearing that Var-tan has requested.

[T]o determine whether predeprivation process was required, we must apply the familiar tripartite test set out in *Math-ews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under that test, we must weigh the importance of the interest of which the plaintiff is be-ing deprived, the extent, if any, to which the particular procedure contended for will reduce the risk of an erroneous dep-rivation, and the burden that would be imposed upon the government if that pre-deprivation process were required.

*Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989).

It appears that plaintiff's interest is only a monetary one. Vartan has emphasized the great dollar value of the lease and the magnitude of his now apparently wasted investment and effort, but he has not con-tended that he has suffered any other inju-ry from Sobolevitch's conduct. He has not asserted, for example, that lost profits from the loss of the lease or wasted costs of construction preparation have had a fa-tal impact upon his business. Thus, if his claim is meritorious, Vartan can be fully compensated for his damages in his state proceedings, now pending in the common-wealth court on his appeal from an adverse decision of the Pennsylvania Board of Claims. *See Reich*, 883 F.2d at 243. The mere magnitude of those damages alone is insufficient to find that this first factor should favor plaintiff.

"The second factor to be considered is the 'fairness and reliability of the existing procedures, and the probable value, if any, of additional procedural safeguards.' *Mathews*, 424 U.S. at 343, 96 S.Ct. at 907." *Reich*, 883 F.2d at 243. Vartan strenuous-ly questions the fairness and reliability of the existing procedures—the postdepriva-tion proceedings before the Board of Claims which may very well proceed through the appellate process to the Penn-sylvania Supreme Court. Plaintiff asserts

that the members of that court were responsible for Sobolevitch's decision to terminate the lease. He argues that they therefore cannot be impartial arbiters of his claim. He also contends that they cannot be expected to award damages that would have to come from their own budget.

However, problems arising in individual cases, even those of a potentially constitutional magnitude, are not appropriate for consideration in regard to the second factor. In considering that factor, the Supreme Court and the Third Circuit have said that "we must keep in mind that 'procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the *generality of cases*, not the rare exceptions.'" *Reich*, 883 F.2d at 243 (emphasis in *Reich*) (quoting *Mathews*). We recognize that this statement was made in cases in which the fairness of the potentially ultimate arbiters of the plaintiff's claim was not in question and was directed at the obvious proposition that each case necessarily presents its own facts and evidentiary problems. Nevertheless, the statement is equally applicable here because the dispositive element is the generality of cases, not the problems that may arise in a particular case.

For this reason, the cases Vartan has cited in his support, admittedly dealing with due process challenges to the fairness of decisionmakers, are not persuasive. In *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975), the Pennsylvania Supreme Court found that due process was violated when the official charged with deciding whether a state police officer should undergo a court martial would also make the ultimate determination of guilt or innocence. In *Commonwealth, Department of Insurance v. American Bankers Insurance Co.*, 26 Pa.Commw. 189, 363 A.2d 874 (1976), *aff'd per curiam*, 478 Pa. 532, 387

A.2d 449 (1978), the commonwealth court found a due process violation when the supervisor of the prosecuting attorney was appointed to be the hearing examiner at an administrative proceeding against the appellant insurance company. While the end result in both cases was the termination of all of the proceedings against the defendants, nevertheless, they are distinguishable because they were challenges to the process in particular situations.

Additionally, neither of these cases is in the same factual posture as the present one. In neither case did the defendant, in the face of a postdeprivation remedy, request that predeprivation process be made available. And in each case the defendant was attacking the fairness of an imminent proceeding. In our view, Vartan would have to have an appeal currently before the supreme court to put the cases on the same footing. It is not certain, however, that such an appeal will ever take place. No matter how meritorious Vartan's claim of bias may be, we must focus on the specific claim presented · in this lawsuit, a due process right to a predeprivation hearing in the context of a purported breach of contract by the state. The cited cases do not support such a right.[1]

Even if we were to evaluate the second factor in light of Vartan's particular circumstances, we could not agree that this factor favors him. The second factor requires us, in part, to assess the probable value of requiring additional procedural safeguards to those already in place. If Vartan's allegations are true, Sobolevitch terminated the lease because of pressure or direction from members of the state supreme court. We fail to see the value of requiring a predeprivation hearing when Vartan is alleging that the decisionmaker is not acting independently. If the supreme court was dictating Sobolevitch's actions,

---

1. Plaintiff has also relied upon the following statement of Justice Blackmun in his concurring opinion in *Parratt v. Taylor*, 451 U.S. 527, 546, 101 S.Ct. 1908, 1918, 68 L.Ed.2d 420, 435 (1981): "The mere availability of a subsequent tort remedy before tribunals of the same authority that, through its employees, deliberately inflicted the harm complained of, might well not provide the due process of which the Fourteenth Amendment speaks." In the context of *Parratt*, this statement was dictum since the case dealt with the negligent deprivation of a prisoner's hobby materials. We decline to rely upon dictum in the concurring opinion of a single Justice.

the opportunity of a predeprivation hearing was not going to alter her conduct.

The third factor we must consider is the burden that would be imposed upon government if a predeprivation hearing was required. Vartan has attempted to minimize this burden by limiting such hearings to agencies that have the capacity to influence the postdeprivation state court remedies. Plaintiff contends no other governmental entities have that power except judicial ones. He also argues that most state agencies provide that their contracts may be terminated at the Commonwealth's convenience so that there would not be many contracts terminable only for cause that would implicate the due process clause.

Finally, he asserts that the pretermination process would not have to be elaborate. The state would only have to provide notice of the intention to terminate, the grounds for termination, and an opportunity to respond. In the instant case, it would only have been a matter of permitting Vartan to present his belief that the necessary approvals had been obtained, despite the representations in Sobolevitch's letter of June 6, 1990 to the contrary. In plaintiff's view, Sobolevitch may then have decided not to terminate.

We do not believe that the number of contracts arguably subject to a pretermination process can be limited in the fashion suggested by plaintiff. Vartan's lease does not contain a specific "except for cause" provision. Instead, his claim that the contract can only be terminated for cause arises from the obligations imposed by the lease on the landlord and tenant, obligations that share a common legal identity and effect with the provisions in any other contract. Thus, even if some other contracts with the state have terminable at will clauses, undoubtedly some disputes may arise about goods or services already supplied as to which the Commonwealth may arguably have a legal obligation. To that extent, contractors could logically argue, as Vartan does here, that there was a legal obligation on the part of the state, not just an expectancy on their part, to fulfill the contract and hence that they had a property interest protected by due process. This argument could even extend to simple invoices. Neither the Commonwealth nor the AOPC should be burdened with notice and opportunity to be heard every time it wants to contest an invoice. *See Reich, supra.*

We will concede for the purposes of argument that only governmental agencies with the ability to affect the outcome of postdeprivation remedies would be required to provide predeprivation remedies. We are not convinced that the issues will always be as simple as plaintiff represents them to be in the instant case. There may be cases in which objections to termination would involve detailed or complex presentations. In that event, the burden on government would be great.

On balance then, and on the precise issue presented by this case—whether Vartan was entitled to any predeprivation process before Sobolevitch terminated the lease—we will grant the defendant's motion and issue an appropriate order.

## ORDER

AND NOW, this 20th day of November, 1991, upon consideration of defendant's motion to dismiss, it is ordered that:

1. The motion is granted and this action is hereby dismissed.

2. Plaintiff's request for oral argument is denied.

3. The scheduling conference set for November 25, 1991, is canceled.

4. The Clerk of Court shall close this file.