**Samuel J. REICH, Appellant,**

v.

**Patricia BEHARRY, an individual and The County of Washington.**

No. 88–3469.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Dec. 2, 1988.

Decided Aug. 24, 1989.

Rehearing and Rehearing In Banc Denied Oct. 2, 1989.

Deborah S. Miskovich, Hess, Reich, Georgiades, Wile & Homyak, P.C., Pittsburgh, Pa., for appellant.

Robert F. Wagner and Christine A. Ward, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before SEITZ [*], STAPLETON and COWEN, Circuit Judges.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Samuel J. Reich, a lawyer, was hired by the county of Washington as a special prosecutor to investigate and prosecute the county's controller, Patricia Beharry. Reich performed his assigned task, although Beharry was acquitted. He then submitted bills for payment to the county, but the subject of his investigation proved an obstacle to his compensation: To be paid, Reich had to obtain the controller's

[*] Since the date of argument of this case Judge Seitz has taken senior status.

approval, an approval Beharry has refused to grant.

Reich brought an action in the United States District Court for the Western District of Pennsylvania, claiming that Beharry and the county had deprived him of property without due process of law in violation of the procedural and substantive components of the fourteenth amendment's due process clause and 42 U.S.C. § 1983. Reich also appended state law claims for breach of contract and unjust enrichment against the county.

The county filed an answer, admitting most of Reich's allegations, but Beharry filed a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The district court granted that motion and dismissed all of Reich's claims against both parties, 686 F.Supp. 533.[1] We will affirm.

## I.

We accept as true all of the complaint's factual allegations and all reasonable inferences that can be drawn from them. We must refrain from affirming the dismissal unless we are convinced that no relief could be granted under any provable set of facts. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

On April 10, 1986, Reich entered into a written agreement with the county providing for his appointment as a special prosecutor. The agreement provided that Reich would be paid by the hour and that he was to be considered "an independent contractor for all purposes." App. at 16. Further, the agreement could be terminated "at any time by either party." App. at 14. No provision for the timing of Reich's payment was included in the agreement.

At the time this agreement was entered the county's rules governing contract payment procedures provided in part as follows:

> Subject to the power and duty of the county commissioners to manage and ad-

minister the fiscal affairs of the county, the controller shall supervise the fiscal affairs of the county including the accounts ... of all officers and other persons who shall ... receive ... the public moneys of the county. The discretionary powers of the controller shall not be applicable to the management of the fiscal policies of the county commissioners, ... but the controller *shall refuse to authorize any fiscal transaction which is, by law, subject to his supervision or control where it appears that such transaction is not authorized by law, or has not been undertaken according to law, or has not received approval according to law....*

16 P.S.A. § 1702(a) (emphasis supplied).

\*　　\*　　\*　　\*　　\*　　\*

> If the controller does not approve a claim, bill or demand presented to him, he shall within thirty days forward it to the county commissioners together with his notice that he has refused to approve the same and his reasons therefor. The county commissioners shall consider the claim, bill or demand and, if they consider that it should be paid by the county, they shall so notify the controller. *If the controller thereafter continues to refuse his approval no payment shall be made thereon by the county except pursuant to an order of court upon proper issue thereto directing the controller to approve payment.*

16 P.S.A. § 1752 (emphasis supplied).

The county filed an Order of Appointment on April 10, and on the same day Reich was directed to investigate and prosecute Beharry for violations of the Pennsylvania Campaign Expense Reporting Act and the Public Officials Ethics Act.

Reich submitted bills to the county on May 12, July 3, August 12, and September 9, 1986, all of which were approved by the county and forwarded to Beharry for payment. Beharry refused to approve payment for any of the bills.

---

**1.** Reich does not challenge on appeal the propriety of the district court's sua sponte dismissal of his claims against the county.

In December 1986, the County informed Reich that it would assist him in obtaining payment by having the County Salary Board confirm his position. The Salary Board met on December 29, and all members of the board—with the exception of Beharry—approved Reich's appointment as special prosecutor. At the board meeting, Beharry stated that she would not pay Reich, referring to him as a "hired gun." Reich again submitted his bills for payment; again he was rebuffed by Beharry.

Reich filed a complaint in federal court, with federal jurisdiction premised on 28 U.S.C. § 1343. Reich claimed that "[t]he unilateral and deliberate decision of ... Beharry to utilize her official position as Controller" to refuse to pay him "constituted a denial of both procedural and substantive due process of the law in violation of the Fourteenth Amendment." Complaint ¶ 37. Reich further alleged that Beharry's decision was "irrational," Complaint ¶ 39, and motivated by her "personal animosity toward [Reich] for having prosecuted her and a lack of impartiality towards [Reich] and as such constituted a denial of substantive due process...." Complaint ¶ 38.

Reich also asserted that "[n]either ... [the] County nor ... Beharry provided [him] with any reasonable remedies adequate to meet the due process requirements of the Constitution and thereby rectify the legal error created by ... Beharry." Complaint ¶ 47. His state-law claims against the county consisted of one count of breach of contract and one count claiming that "[a]s a result of [Reich's] services rendered to [the] County, [the] County has become unjustly enriched at [Reich's] expense." Complaint ¶ 55.

In granting Beharry's 12(b)(6) motion, the district court found the case to be governed by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Without discussing whether Beharry's act was "random and unauthorized," *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916, or whether Reich had a property interest implicating the due process clause, the district court assumed that *Parratt's* inquiry into the adequacy of state remedies was germane. The district judge found that, under Penn-sylvania law, Reich's causes of action for breach of contract and unjust enrichment against the county provided him with "clearly adequate post-deprivation remedies." App. at 66A. Moreover, the district court concluded that a mandamus action was available to Reich for compelling Beharry to approve payment. The district court dismissed Reich's claims against both the county and Beharry, but without explanation the court stated that if the state court concluded that mandamus was not available as to Beharry, Reich could petition to reopen his claim against Beharry.

## II.  PROCEDURAL DUE PROCESS

It is not contested that Beharry and the county were acting under color of state law. Hence, the remaining § 1983 issue is whether Reich was deprived of a constitutional right.

We read Reich's complaint and his briefs on appeal as arguing both that he should have been afforded a predeprivation hearing (that is, a hearing prior to Beharry's decision denying him payment) and that, even if he was only entitled to a postdeprivation hearing, the state law remedies afforded him are constitutionally inadequate.

### A.  *Postdeprivation Process*

■ As we have noted, Reich asserts that there is no state postdeprivation process available to him for "rectify[ing] the legal error created by defendant Beharry." As we read his brief, however, the only argument he makes in support of this contention is that a mandamus action may not be available to compel Beharry to approve the submitted vouchers. We assume, without deciding, that this remedy is not available to Reich. He concedes that he has a state cause of action for breach of contract and that concession is a full and sufficient answer to his complaint about inadequate postdeprivation process. If Reich's contract gives him a property interest protectible by procedural due process and if he is not entitled to predeprivation process, we perceive, and Reich suggests, no reason why he will not receive constitutionally adequate process to protect that property interest when he asserts his breach of contract claim in the state courts.

## B. *Predeprivation Process*

Reich's principal procedural due process claim is that he was entitled to a hearing before Beharry decided what position to take in response to his submission of invoices. This claim poses two issues: (1) Whether Reich has a property interest that triggers the protection of procedural due process, and (2) if so, whether the "process due" requires a predeprivation hearing.

■ So far as we have been able to determine, every court of appeals that has directly confronted the issue has concluded that although state contract law can give rise to a property interest protectible by procedural due process, not every interest held by virtue of a contract implicates such process. *E.g., Physicians' Serv. Med. Group v. San Bernardino Cty.*, 825 F.2d 1404, 1408 (9th Cir.1987); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981); *Yatvin v. Madison Metropolitan School Dist.*, 840 F.2d 412, 416 (7th Cir.1988); *Boucvalt v. Board of Commissioners of Hosp. Service Dist.*, 798 F.2d 722, 730 (5th Cir.1986); *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988). Many of these courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. *E.g., Physicians' Serv. Med. Group*, 825 F.2d at 1408; *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983). We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

■ Having reached this conclusion, we, as well as many others, have found it difficult to identify precisely which contract rights constitute protectible property interests for this purpose and which do not. While we have considerable doubt as to whether Beharry's challenged decision deprived Reich of a protectible property interest,[2] it is unnecessary for us to undertake this difficult task of line-drawing. Assuming, without deciding, that Beharry did deprive Reich of a protected property interest, we think it clear that he had available to him all the process that was constitutionally due.

Since Reich makes no factual allegation that Beharry's decision inflicted substantial irreparable injury, *compare Kahn v. United States*, 753 F.2d 1208, 1219–20 (3d Cir. 1985), in order to determine whether predeprivation process was required, we must apply the familiar tripartite test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under that test, we must weigh the importance of the interest of which the plaintiff is being deprived, the extent, if any, to which the particular procedure contended for will reduce the risk of an erroneous deprivation, and the burden that would be imposed upon the government if that predeprivation process were required.

Reich had no interest in continuing employment at stake before Beharry; his contract was one terminable at will and, in any event, he had already completed his per-

---

**2.** In *S & D Maintenance Co., Inc. v. Goldin,* 844 F.2d 962, 966–67 (2d Cir.1988), Judge Newman analyzed a similar issue in the following manner:

An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection. *Goldberg v. Kelly,* [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival.... *Board of Regents v. Roth,* [408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)] and *Perry v. Sindermann,* [408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)] concerned claims to tenured status in public employment.... In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right. Rather, procedural protection is sought in connection with a state's revocation of a *status,* an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.... [W]e hesitate to extend the doctrine ... to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor.

formance under the contract. Nor was Reich's ability to compete for future county business in jeopardy. The only effect of Beharry's decision was to deprive Reich of a fee for professional services for however long it would take to litigate his breach of contract claim. If his claim was meritorious he was assured of being made whole ultimately; his only interest was in avoiding delay. While this interest of Reich's in prompt receipt of his fee is not insubstantial, it is considerably less weighty than, for example, the receipt of social security benefits the termination of which the Court has held does not require a predeprivation hearing, *Mathews*, 424 U.S. 319, 96 S.Ct. 893, or the termination of tenured employment, which has been held to require such process. *See Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705–06; *Sindermann*, 408 U.S. at 599, 92 S.Ct. at 2698. *See also Brown*, 722 F.2d at 365; *Boucvalt*, 798 F.2d at 729.

The second factor to be considered is the "fairness and reliability of the existing procedures, and the probable value, if any, of additional procedural safeguards." *Mathews*, 424 U.S. at 343, 96 S.Ct. at 907. In considering this factor, we must keep in mind that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the *generality of cases*, not the rare exceptions." *Id.* at 344, 96 S.Ct. at 907 (emphasis added). From this perspective, we assess as slight both the risk of error from the existing procedures and the marginal reduction in risk that would result from predeprivation hearings. In the vast majority of cases in which persons or firms have provided professional services to public entities there will be no credibility issues and the documents submitted in support of the invoices will provide an entirely satisfactory vehicle for the contractor to justify his fee. While there may be cases in which an opportunity to be heard face-to-face would materially aid a contractor with a meritorious claim, we believe such cases are few and far between.

Finally, given the volume of invoices submitted to public agencies covering professional and other similar services, we believe the added administrative cost of providing a hearing prior to every governmental decision on whether to honor such an invoice would be very substantial.

In sum, we conclude that the additional cost involved with providing a predeprivation hearing in this context far outweighs its utility in reducing the risk of error and that Reich's interest in the prompt payment of his fee falls far short of justifying a requirement that such process be constitutionally required.

## III. SUBSTANTIVE DUE PROCESS

■ Reich's complaint alleges that Beharry had no legitimate reason for denying payment to him and that she acted out of "personal animosity toward [Reich] for having prosecuted her...." ¶ 38 Complaint, app. at 10. Reich contends, therefore, that Beharry's decision "constituted a denial of substantive due process of the law...." *Id.* While, as we have discussed above, it is well settled that state-created property interests, including some contract rights, implicate the protection of the procedural aspect of the due process clause, the issue of whether and when state-created property interests invoke substantive due process concerns has not been decided by the Supreme Court and is subject to varying analyses and conclusions by the lower courts. *See Regents of the Univ. Of Mich. v. Ewing*, 474 U.S. 214, 228, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring) (state-created property interest not necessarily "property" for substantive due process purposes); *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 957 (7th Cir.1988) (no substantive due process claim stated when state-created property interest at stake and state remedies are adequate); *Schaper v. City of Huntsville*, 813 F.2d 709, 717–18 (5th Cir.1987) (where claim is barred under *Parratt v. Taylor* because act complained about is "random and unauthorized," plaintiff cannot state claim for violation of substantive due process); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."); *Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir.1983) (Where property interest ex-

ists for purposes of procedural due process, it also exists for purposes of substantive due process.); *Moore v. Warwick Public School Dist. No. 29*, 794 F.2d 322, 328–29 (8th Cir.1986) (substantive due process claim stated where "arbitrary and capricious state action" alleged regarding interest in continued employment); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1484–85 (9th Cir.1989) (substantive due process is violated when property rights are subject to arbitrary or malicious use of governmental power).

In *Mauriello v. U. of Med. & Dentistry of N.J.*, 781 F.2d 46 (3d Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986) this court acknowledged that what constitutes a property interest in the procedural due process context might not constitute one in that of substantive due process. In *Mauriello*, a student dismissed for academic reasons from a doctoral program claimed that the university violated her procedural due process rights by not providing her with adequate notice and a chance to explain what the school viewed as her academic deficiencies, and that the dismissal itself violated substantive due process. The *Mauriello* panel found that the student had received all the procedural process due under the fourteenth amendment.

In discussing the student's substantive due process claim, the *Mauriello* court appeared to approve of Justice Powell's view in *Regents of University of Michigan v. Ewing*, 474 U.S. at 228, 106 S.Ct. at 514, that, while property rights for procedural due process purposes are created by state law, substantive due process rights are created by the Constitution. The *Mauriello* court also "share[d] Justice Powell's doubt about the existence of ... a substantive due process right in the circumstances here," 781 F.2d at 52, noting that the student's claim to continued enrollment in a graduate program bore " 'little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution.' " 781 F.2d at 50 (quoting *Ewing*, 106 S.Ct. at 516 (Powell, J., concurring)).

More recently, this court had the occasion in *Ransom v. Marrazzo*, 848 F.2d 398, 411–12 (3d Cir.1988), to consider whether one species of state law entitlement could bring substantive due process into play. We there noted that the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) had held that "the expectation of utility service rises to the level ... of a 'legitimate claim of entitlement' encompassed in the category of property interest" implicating procedural due process. 848 F.2d at 409. Nevertheless, we concluded that an entitlement under state law to water and sewer service did not constitute a protectible property interest for purposes of substantive due process. We held as follows:

> The legal fact that, once a municipality (or, for that matter, a private utility company) establishes a utility for its citizens, a citizen's expectation of receiving that service rises to the level of a property interest cognizable under the Due Process Clause, ... merely brings that expectation within the compass of the Fourteenth Amendment's procedural protections, measured according to the *Mathews v. Eldridge* analysis. It does not transform that expectation into a substantive guarantee against the state in any circumstance. Therefore, we reject the claim that conditioning the receipt of water and sewer service on the satisfaction of past due charges for services rendered to the [previous occupant of] applicant's residence raises the question of a substantive due process deprivation.

It is apparent from *Ransom* that, in this circuit at least, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. Moreover, we know from *Ransom* specifically that, despite the importance of utility service to the maintenance of a minimally acceptable standard of living, an arbitrary and capricious termination of such service by a state actor does not give rise to a substantive due process claim.

We believe it follows *a fortiori* from the holding in *Ransom* that Reich's complaint fails to state a substantive due process claim. As we have noted, the only interest that Reich had at stake before Beharry

was his interest in avoiding delay in the receipt of payment of a bill for professional services rendered. We can think of no basis for according substantive due process protection to this interest while denying it to those who have had their utility service terminated.

## IV.

Since Reich has available to him all of the procedural protections to which the fourteenth amendment's due process clause would entitle him and since he possesses no property interest that entitles him to substantive due process protection, the judgment of the district court will be affirmed.[3]

---

**3.** After concluding that Reich's complaint failed to state a federal claim, the district court did not abuse its discretion in dismissing Reich's pendent state-law claims. *See Marshall–Silver Const. Co., Inc. v. Mendel,* 835 F.2d 63, 67 (3d Cir.1987), *vacated on other grounds,* —— U.S. ——, 109 S.Ct. 3233, 106 L.Ed.2d 582 (1989); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).