**Carl A. HOFFMAN, Jr., and Pennsylvania Institutional Health Services, Inc., Plaintiff,**

v.

**Joseph D. LEHMAN, Laurence J. Reid, Cheryl G. Young, Jeffrey A. Beard, and Richard Schulman, Defendants.**

**Civil Action No. 1:CV–94–1164.**

United States District Court,
M.D. Pennsylvania.

Jan. 23, 1996.

Linda Cadden Barrett, Office of Attorney General, Harrisburg, PA, Sarah M. Bricknell, Buchanan, Ingersoll, P.C., Harrisburg, PA, Andrew S. Gordon, Buchanan, Ingersoll, P.C., Harrisburg, PA, John B. Consevage, Buchanan, Ingersoll, Harrisburg, PA, Kristen L. Darke, Buchanan, Ingersoll Professional Corporation, Harrisburg, PA, P. Jerome Richey, Buchanan, Ingersoll Professional Corporation, Harrisburg, PA, for Joseph D. Lehman, Laurence J. Reid, Cheryl G. Young, Jeffrey A. Beard, defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion for summary judgment on the ground of qualified immunity. Briefs have been filed by both parties and the motion is ripe for disposition.

### I. *Background*

Pursuant to 42 U.S.C. § 1983, Plaintiffs Carl A. Hoffman ("Hoffman") and Pennsylvania Institutional Health Services, Inc. ("PIHS") have filed this action alleging various violations of the Fourteenth Amendment to the United States Constitution. Defendants are four officials of the Pennsylvania Department of Corrections ("DOC") and one official of the Office of the State Inspector General ("OIG"): Joseph D. Lehman, Commissioner of DOC; Laurence J. Reid, Executive Deputy Commissioner of DOC; Cheryl G. Young, Chief Counsel to DOC; Jeffrey A. Beard, Superintendent of State Correctional Institution at Camp Hill ("SCI–Camp Hill"); and Richard Schulman, Deputy Inspector General.

Hoffman is a doctor licensed to practice medicine by the Commonwealth of Pennsylvania. He is the President, Medical Director and sole stockholder of PIHS. PIHS is a professional corporation which provides institutional health care services to the inmate populations of various correctional institutions both inside and outside Pennsylvania.

Joshua D. Lock, Harrisburg, PA, for Carl A. Hoffman, Jr., Pennsylvania Institutional Health Services, Inc., plaintiffs.

On June 1, 1989, PIHS entered into a four year contract with DOC to provide medical

services to inmates at SCI–Camp Hill. PIHS subsequently entered into similar contracts with DOC to provide medical services to correctional facilities at Smithville, Dallas, Muncy and Waymart. During the period of the SCI–Camp Hill contract, Dr. Hoffman and PIHS were the subject of several investigations by OIG and the Cumberland County District Attorney's Office. These investigations concerned allegations of contract fraud and the cause of inmate John Edward Powell's death on June 30, 1992.

On July 29, 1992, DOC notified PIHS that its five contracts with the Commonwealth would be terminated. On August 5, 1992, DOC informed PIHS that it would be suspended from contracting with the Commonwealth for a period of three months. Pursuant to state administrative procedures, PIHS representatives were granted a hearing on September 23, 1992, to determine whether the suspension would be lifted or PIHS would be debarred from further contracting with the Commonwealth. Subsequent to the hearing, Hoffman and PIHS were debarred from contracting with the Commonwealth.

Plaintiffs allege that during the course of events described above, Defendants were engaged in a conspiracy to terminate Plaintiffs' existing contracts with DOC, debar Plaintiffs from future contracting with the Commonwealth, and destroy Plaintiffs' business by depriving it of future commercial opportunities and undermining its business reputation. They claim that Defendants publicly, and falsely, blamed them for the death of inmate Powell in an effort to effect these goals and to evade their own responsibility for the death. (Complaint at 1–2; ¶¶ 102–157.)

Plaintiffs filed the instant § 1983 action and asserted substantive and procedural due process claims and an equal protection claim under the Fourteenth Amendment. On February 16, 1995, this court granted Defendants' motion to dismiss the procedural due process claim and denied it as to the substantive due process and equal protection claims. On August 22, 1995, upon motion by Defendants and over the objection of Plaintiffs, the court stayed discovery pending disposition of the instant motion for summary judgment on qualified immunity grounds.

## II. *Discussion*

Defendants' motion for summary judgment is before the court in a somewhat awkward posture. Defendants did not raise the qualified immunity defense in their motion to dismiss, and a substantial majority of their argument in support of summary judgment is that Plaintiffs' allegations, even if true, do not state a violation of clearly established law. Consequently, notwithstanding that this is a motion for summary judgment, this memorandum will be occupied primarily with determining whether Plaintiffs have alleged violations of clearly established law rather than with evaluating the parties' evidentiary submissions.

Of course, where Plaintiffs have raised questions requiring application of the summary judgment standard, the motion will only be granted if there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Since discovery has been suspended, the court must determine whether Defendants have submitted evidence which precludes the possibility that Plaintiffs may establish an issue of material fact if permitted to complete discovery.

### A. Qualified Immunity

■ The Third Circuit recently summarized the qualified immunity standards as follows:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... [F]or there to be liability, the right alleged to have been violated must have been 'clearly established' [in a particularized sense]....

*In re City of Philadelphia Litigation*, 49 F.3d 945, 960–61 (3d Cir.1995) (citations and internal quotations omitted). For a right to be clearly established in a 'particularized' sense there need not be precedent directly

on point. *Good v. Dauphin County Social Serv.,* 891 F.2d 1087, 1092 (3d Cir.1989).

The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.

*Id.; accord In re City of Philadelphia,* 49 F.3d at 961.

### 1. Substantive Due Process

#### a. Have Plaintiffs Alleged A Violation Of Clearly Established Law?

The court turns first to Plaintiffs' substantive due process claim. The Fourteenth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." This clause has been interpreted as giving rise to both "substantive" and "procedural" due process protection. In evaluating either type of claim, the court must first determine whether the interest assertedly violated is a liberty or property interest within the scope of the Fourteenth Amendment. *See, e.g., Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983) (procedural due process context); *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 222–223, 106 S.Ct. 507, 511–513, 88 L.Ed.2d 523 (1985) (substantive due process context); *Mauriello v. Univ. of Medicine and Dentistry of New Jersey,* 781 F.2d 46, 50 (3d Cir.1986) (substantive due process context).

For procedural due process purposes, a protected interest "may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt,* 459 U.S. at 466, 103 S.Ct. at 868. However, the range of property interests sufficient to underwrite a substantive due process claim is more limited than in the procedural due process context. *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell,* 53 F.3d 592, 598–601 (3d Cir.1995); *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir.1989). The narrowest view of substantive due process interests, first articulated by Justice Powell in his concurrence in *Ewing,* 474 U.S. at 229, 106 S.Ct. at 515, and recently adopted by the Eleventh Circuit in *McKinney v. Pate,* 20 F.3d 1550,

1556 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), is that only rights arising under the Constitution itself warrant substantive due process protection. While the Third Circuit has expressed some sympathy for this view, it has not been adopted. *DeBlasio,* 53 F.3d at 598–601; *Reich,* 883 F.2d at 244; *Mauriello,* 781 F.2d at 46. Most recently, the Circuit stated that although it has "yet to clearly define the category of property interests protected by the concept of substantive due process ...," ownership of property is worthy of such protection. *DeBlasio* 53 F.3d at 599–600 (citing *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988)). While the forgoing line of cases addressed property rather than liberty interests, the court believes that the principle that there are interests entitled to procedural but not substantive due process protection applies to liberty interests as well. *See McKinney,* 20 F.3d at 1556–57 (discussing "substantive due process rights" without distinguishing between property and liberty interests).

■ The court thus must determine whether, during the period in question, the interest allegedly violated by Defendants was 'clearly established' as a liberty or property interest deserving of substantive due process protection. The most important of Plaintiffs' allegations for present purposes are their claims that Defendants conspired to (1) suspend and then debar them from Commonwealth contracting for partisan reasons, and (2) destroy their business reputation by publicly, and falsely, attributing the death of inmate John Powell to their misconduct.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court recognized a liberty interest in reputation, especially as it pertains to employment opportunities. The case arose when a professor sued a state university on the ground that it did not afford him adequate procedural due process before declining to renew his contract. In assessing whether the plaintiff's claim involved a liberty interest cognizable under the Fourteenth Amendment, the Court, quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), stated:

Without doubt, [liberty under the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Roth*, 408 U.S. at 572, 92 S.Ct. at 2706 (citations omitted). *Roth* punctuated this quotation from *Meyer* by stating that "[i]n a Constitution for a free people, there can be no doubt that the meaning of liberty must be broad indeed." *Id.*

*Roth* ultimately found that the university did not deprive the plaintiff of a liberty interest because, "in declining to rehire the respondent, [the state] did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality." *Id.* at 573, 92 S.Ct. at 2707. The Court stated it "would be a different case" if the plaintiff's "good name, reputation, honor or integrity" were at stake, or the state "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* (internal quotations omitted).

The Supreme Court subsequently held that to prevail on a claim of deprivation of a liberty interest in reputation under *Roth*, a plaintiff must establish that the stigmatizing allegation was publicly disclosed by the state, *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), and that it caused tangible loss, *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Numerous Circuit courts, relying on *Roth* and its progeny either expressly or impliedly, have held that suspension or debarment from bidding on government contracts may violate a liberty interest if based upon charges of wrongdoing which compromise future employment opportunities. *See Kartseva v. Dep't. of State*, 37 F.3d 1524,

1527–29 (D.C.Cir.1994); *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C.Cir.1993); *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357–58 (11th Cir. 1992); *Sutton v. United States Dep't of Housing & Urban Dev.*, 885 F.2d 471, 474–75 (8th Cir.1989); *ATL, Inc. v. United States*, 736 F.2d 677, 682–83 (Fed.Cir.1984).

■ It must be noted, however, that *Roth*, *Bishop* and *Paul*, as well as the cases applying them to the government contracting context, all dealt with procedural rather than substantive due process claims. This raises the question whether the liberty interest enunciated in *Roth* is among those sufficient to trigger procedural but not substantive due process protection. *Roth* itself answered this question decisively, and in the negative. By relying upon the portion of *Meyer v. Nebraska* quoted above, *Roth* explicitly derived the liberty interest in reputation from the Constitution. Even when Third Circuit precedent regarding what interests warrant substantive due process protection is read most narrowly, it is settled that liberty interests arising under the Constitution itself are entitled to such protection.

Furthermore, the court believes that the liberty interest recognized in *Roth*, its application to the public contracting context and its entitlement to substantive due process protection were adequately particularized when the events in question occurred. That is, in light of decided case law at that time, no reasonably competent official would have believed it lawful to conspire to debar Plaintiffs from contracting with the Commonwealth and to destroy their business reputation by falsely blaming them for inmate Powell's death. Having concluded that Plaintiffs have asserted the violation of clearly established and particularized interest protected by substantive due process, the court turns to the doctrine of substantive due process itself.

■ Substantive due process is intended to safeguard individuals from the arbitrary and capricious exercise of state power. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Bello*, 840 F.2d at 1128. In *Bello*, the Third Circuit

discussed the requirements of a substantive due process claim within the context of zoning applications. The plaintiff claimed that municipal officials processed his zoning application according to proper procedures, but then deliberately and arbitrarily abused their authority to deny it due to personal bias. The court stated:

> The plaintiff in the case presented evidence from which a fact finder could reasonably conclude that certain council members ... improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. These actions have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983.

*Id.* at 1129–30. In the instant case, Plaintiffs' allegations, if true, would surely represent the arbitrary exercise of state power, motivated by personal interest, and without a legitimate governmental objective. This doctrine was clearly established at the time the events at issue occurred. Consequently, Plaintiffs' allegations are sufficient to state a substantive due process claim which cannot be defeated by qualified immunity.

**b. Are There Genuine Issues Of Material Fact Which Preclude Summary Judgment?**

 Defendants argue that even if Plaintiffs have stated a substantive due process claim based upon clearly established law, the evidence so far developed entitles them to summary judgment on the ground of qualified immunity without further discovery. The most significant evidence which they rely upon is (1) a report produced by OIG which attributes substantial responsibility for the death of inmate Powell to PIHS; (2) a report issued by the District Attorney of Cumberland County which reached the same conclusion; and (3) Hoffman's apparent admission that he altered inmate Powell's medical records after his death. Defendants maintain that this evidence demonstrates a rational basis for their decision to pursue Plaintiffs' suspension and debarment and thus the court should not entertain Plaintiffs' conspiracy allegations.

The court finds this evidence less decisive than Defendants. The alleged conspiracy was undertaken and PIHS was suspended prior to the issuance of either of the reports. Additionally, both reports, but particularly the more extensive OIG report, attribute significant blame for Powell's death to DOC as well as PIHS. (Defendants' Exhibit 14 at 565–70; Exhibit 12 at 531–32.) The OIG report singles out Defendant Beard as being the most responsible among DOC employees. (Defendants' Exhibit 14 at 570.) Consequently, there is some indication that DOC stood to benefit from attributing blame for Powell's death to PIHS.

As for Hoffman's alteration of Powell's medical records, the court certainly agrees with Defendants that it is suspicious, to say the least, and it appears to have violated certain record keeping regulations cited by Defendants. However, the court also notes that Hoffman contends that he was correcting an error, and that the District Attorney's report did "not dispute this explanation because ... [it found] no exculpatory benefit from the change." (Defendants' Exhibit 12 at 532.)

The most significant piece of evidence offered by Plaintiffs in opposition to the instant motion is the affidavit of Terry Henry, former Executive Assistant to Defendant Lehman. (Henry Aff., Plaintiffs' Exhibit F.) Henry avers that in March or April of 1991 he was approached by an OIG investigator who was inquiring into potential noncompliance by PIHS with a DOC contract. He states that the investigator indicated that he wanted to "get Hoffman" and appeared to have animosity toward Hoffman. (*Id.* at ¶¶ 7–11.) Henry also asserts that Defendant Lehman made efforts to cause the publication of "negative news stories about PIHS." (*Id.* at ¶ 15.) Finally, Henry states that he overheard a meeting between Defendants Young, Chief Counsel to DOC, Reid, Executive Deputy Commissioner of DOC, and Schulman, the Inspector General's Deputy Inspector in charge of the investigation into Powell's death. The meeting allegedly occurred on or before the date of PIHS' debar-

ment hearing, which was conducted by Reid. Henry claims that Schulman instructed Reid regarding how to conduct the hearing, and directed that the outcome of the hearing be adverse to PIHS. (*Id.* at ¶¶ 18–22.)

The court cannot conclude based upon the record so far developed that there are no genuine issues of material fact regarding whether Defendants are entitled to qualified immunity. The court's view is influenced by the fact that a considerable amount of discovery remains to be completed. Accordingly, Defendants' motion for summary judgment with respect to Plaintiffs' substantive due process claim will be denied.

### 2. Equal Protection

In view of the fact that discovery will go forward on Plaintiffs' substantive due process claim the court will not reach the equal protection claim. The reason the court suspended discovery pending disposition of the qualified immunity issue was to ensure that the state was not unnecessarily subject to burdensome and costly discovery. Since the substantive due process and equal protection claims implicate considerably overlapping factual issues, and discovery on the due process claim will proceed, there is no longer an efficiency justification for entertaining Defendants' summary judgment motion on an incomplete record.

### B. Claim Preclusion and Issue Preclusion

■ Defendants argue that Plaintiffs are precluded from pursuing their § 1983 claim in federal court by both issue and claim preclusion. They maintain that Plaintiffs unsuccessfully raised identical substantive due process and equal protection claims in an action already decided in the Pennsylvania state courts. (*See* Defendants' Exhibit 16 at ¶¶ 76–87.)

In *Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 188 (3d Cir.1993), the Third Circuit defined issue and claim preclusion as follows:

Issue preclusion, otherwise known as collateral estoppel, bars relitigation of an issue identical to that in a prior action. Claim preclusion, often called res judicata, is broader in effect and prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not, assert in that action.

In the state proceeding relied upon by Defendants, the Commonwealth Court characterized the issue before it as follows:

In this equity action addressed to our original jurisdiction, we are asked to decide whether, prior to an administrative hearing, we should (1) declare that a management directive of the Secretaries of Budget and General Services is unconstitutional on its face because of violation of due process principles set forth in *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992); and (2) enjoin further administrative hearings.

(Defendants' Exhibit 25 at 1308.) In *Lyness,* the Pennsylvania Supreme Court held that a physician's procedural due process rights under the state Constitution were violated when his license to practice medicine was revoked by an administrative board in which prosecutorial and adjudicative functions were commingled. 605 A.2d at 1210–11. Consistently with the Commonwealth Court's statement of the issue before it, the decision nowhere discusses or even alludes to substantive due process or equal protection claims under the United States Constitution. It is evident that the claims presently before this court were not litigated and decided on the merits in the state court action relied upon by Defendants. Accordingly, Defendants' preclusion defenses must be rejected.[1]

### C. Plaintiffs' Failure To File A Statement Of Material Facts

Under Local Rule 7.4, the party filing a summary judgment motion must submit a separate statement of material facts, in numbered paragraphs, as to which it contends there is no genuine issue to be tried. The

---

1. Because the prior state court proceeding did not address issues relevant to this action, this court did not discuss Defendants' claim that the

state proceeding somehow supports their assertion of qualified immunity.

rule further requires that the party opposing the motion file a statement of material facts responding to the numbered paragraphs in the movant's statement. Finally, Rule 7.4 provides that the material facts in the moving party's statement are deemed admitted if not specifically denied by the nonmoving party.

In the present case, Defendants filed a statement of material facts and Plaintiffs did not. Defendants argue that their statement therefore should be deemed admitted. While the court agrees that Plaintiffs have failed to comply with the Local Rules, it declines to deem Defendants' statement admitted. The court is especially influenced by the fact that, in an exercise of its discretion and over Plaintiffs' objections, the court permitted Defendants to file the instant motion in the midst of discovery. The court has also concluded that the motion fails on the merits. In light of these circumstances, it would seem to the court unfair to enter summary judgment for Defendants, which would follow from deeming their statement admitted, on the basis of this procedural failure.

### III. *Conclusion*

The court has determined, based upon the record so far developed, that Defendants are not entitled to summary judgment on the ground of qualified immunity with respect to Plaintiffs' substantive due process claim. The court will defer ruling on Defendants' motion as to Plaintiffs' equal protection claim. The court has also concluded that neither claim nor issue preclusion present a bar to this action. An appropriate order will be issued.