**Joseph A. MYERS, Plaintiff,**

v.

**PENN TOWNSHIP BOARD OF COMMISSIONERS (Fred Stine, Charles Stauffer, Michael Rishel, Joe Klunk and Wendell Felix); and Penn Township, Defendants.**

No. Civ.A. 1:CV–98–1884.

United States District Court,
M.D. Pennsylvania.

June 3, 1999.

Daniel M. Frey, Hanover, PA, Rees Griffiths, Barley, Snyder, Senft & Cohen, York, PA, for plaintiff.

Walter A. Tilley, III, Stetler & Gribbin, York, PA, for defendants.

## MEMORANDUM

CALDWELL, District Judge.

I. *Introduction.*

Joseph A. Myers Real Estate, Inc. (the "owner/developer") obtained the approval of Penn Township for a plan to construct a residential real estate development. During the course of construction, the Township drew down on a letter of credit that the plaintiff, Joseph A. Myers ("Myers"), had provided to secure the construction of certain improvements required by the plan. According to Myers, it also accepted some money from him to be used to obtain a right-of-way across an adjoining neighbor's property. The right-of-way was required so that improvements could be made to a street in the development. However, the right-of-way was allegedly not obtained.

In an amended complaint, Myers made the following three federal claims by way of 42 U.S.C. § 1983. (The exact relationship between Myers and the owner/developer is not clear from the record.) First, the Township violated his right to procedural due process by drawing down the letter of credit without giving him predeprivation notice and an opportunity to be heard before the drawdown occurred. Second, the Township violated substantive due process when it arbitrarily: (1) drew down the letter of credit; (2) took the money for the right-of-way without obtaining it; and (3) deprived Myers of the use of two lots bordering the street which could not be developed while the street was not improved. Third, the Township violated the takings clause of the fifth amendment by temporarily taking from him the use of the two lots.

The plaintiff has also made three supplemental state-law claims, contending that the actions of the Township constituted a breach of contract, conversion and unjust enrichment.

The defendants are Penn Township and the members of its Board of Commissioners, Fred Stine, Charles Stauffer, Michael Rishel, Joe Klunk and Wendell Felix. We are considering the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), which contends the federal claims are legally meritless and that the supplemental state-law claims should be dismissed without prejudice for lack of jurisdiction.

In deciding the defendants' motion, we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from them in the plaintiff's favor. *See Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir.1993). With this standard in mind, we set forth the background to this litigation, as the plaintiff alleges it.

II. *Background.*

According to the plaintiff, the Township, through its defendant commissioners, approved a plan (the "Plan") authorizing the owner/developer to build a residential housing development. The plaintiff Myers supplied a $466,000 letter of credit to secure the construction of improvements required under the Plan.

The letter of credit was irrevocable and provided that the bank would pay a sight draft presented by the Township when the draft was accompanied by a statement made by a Township official that: "We certify that Joseph A. Myers has failed to satisfactorily complete municipal improvements to the Morelock Hills Subdivision, Penn Township, York County; therefore the amount of the draft is owing to us." In the letter of credit, Penn Township is listed as the beneficiary and Joseph A. Myers is listed as the applicant.

One of the improvements Myers had to construct was a road called Breezewood Drive. Under the Plan, Breezewood Drive was to run between lots 14 and 15 and terminate as a dead end at the boundary line of the development with property

owned by a third party, Warehime Enterprises, Inc. Lots 14 and 15 cannot be developed without Breezewood Drive first being completed. However, to complete Breezewood Drive it is necessary to do some grading work on a portion of the Warehime parcel.

The plaintiff alleges that, although he had never agreed to do the grading work on the Warehime parcel, he nevertheless agreed to do so if the Township agreed to obtain the right to go on the Warehime parcel by condemnation or easement. In October 1993, the plaintiff paid the Township $40,000, which according to him, was to be used to obtain a right-of-way on the Warehime parcel. However, after accepting these funds, the Township allegedly never took any action to acquire the right-of-way or any other action that would have allowed the plaintiff to go on the Warehime Parcel to do the grading work. Additionally, the owners of the parcel have refused Myers access to do the work.

Except for Breezewood Drive where it adjoins lots 14 and 15 all of the other improvements to the development have been completed. The plaintiff thought that eventually this portion of Breezewood Drive would be completed as well and that lots 14 and 15 could be developed. However, he alleges that in October 1998 the Township adopted a final plan for the development which: (1) required the plaintiff to put a barrier where Breezewood Drive would have terminated at the Warehime parcel; and (2) prohibited him from developing lots 14 and 15.

Despite having approved a plan that no longer required completion of Breezewood Drive, in October 1998 the Township drew down $55,495.00 on the letter of credit after presenting a draft to the bank that complied with the conditions of the letter of credit. At that time, the letter had been reduced to $85,000, representing reductions the Township had agreed to as the development was being completed to the Township's satisfaction. Myers avers that the Township drew down the money even though the plaintiff had offered to post an $85,000 bond as collateral. It also indicated that it was going to use the proceeds to complete Breezewood Drive even though it had authorized a final plan that no longer required completion of the road. Plaintiff supplied the bank with a check for the amount of the drawdown rather than have the bank add to his line of credit.

As noted above, the plaintiff made three federal constitutional claims and three supplemental state-law claims. He seeks compensatory and punitive damages along with declaratory relief.

### III. Discussion.

#### A. Procedural Due Process.

The plaintiff contends that the defendants violated procedural due process when the Township drew down $55,495.00 on the letter of credit without giving him predeprivation notice and opportunity to be heard before the drawdown occurred.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Manufacturers Mutual Ins. Co. v. Sullivan*, ——U.S. ——, ——, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999). Only then does the analysis shift to what process was due. *Id.* at ——, 119 S.Ct. at 989, 143 L.Ed.2d at 149. In moving to dismiss this claim, the defendants first argue that the drawdown did not divest the plaintiff of any property because under Pennsylvania law the letter of credit was a contract between the bank and the Township (as the beneficiary of the letter) requiring the bank to pay when the Township made a demand conforming to the conditions of the letter. *See Samuel Rappaport Family Partnership v. Meridian Bank*, 441 Pa.Super. 194, 202, 657 A.2d 17, 21 (1995) (noting that a letter of credit involves three agreements: the underlying agreement between the bank's customer and the beneficiary, an agreement between the bank and its customer to issue the letter of credit, and a

third, the letter itself which requires the bank to pay the beneficiary). Thus, according to the defendants, when the Township drew down on the letter of credit, it took the bank's property, not the plaintiff's. The plaintiff's property would only be involved when the bank later seeks reimbursement from the plaintiff.

As further support for the argument that no property interest was involved here, the defendants cite *A. Aiudi & Sons v. Town of Plainville*, 862 F.Supp. 737 (D.Conn.1994), and *Union Pacific Railroad Co. v. Village of South Barrington*, 958 F.Supp. 1285 (N.D.Ill.1997), two cases that the defendants assert hold that a bank's customer has no property interest in a letter of credit for due process purposes.

In opposition, the plaintiff argues that he had several property interests that were violated when the Township drew down the letter of credit. The first property interest is the money he paid the bank to reimburse it after it honored the Township's drawdown.

The second property interest is in certain statutory rights created by Pennsylvania law: (1) "a statutory right to a prompt release from the Township of all liability pursuant to the letter of credit" after the plaintiff "completed the improvements called for by the Plan"; and (2) "statutory rights to question or contest Township actions and a specific statutory entitlement not to have his money used for purposes other than the construction of public improvements on his land," citing 53 P.S. §§ 10510–10511 (Purdon 1997). (Opposition brief at p. 9).

The plaintiff also argues that *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir.1994), and *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir.1980), support his procedural due process claim. In *Jordan*, the Third Circuit held that Pennsylvania's then procedure for executing on a confessed judgment violated due process because: (1) it did not require review by an official who had discretion to reject the execution if the official believed that there were insufficient grounds to attach the judgment debtor's property; and (2) it did not provide a prompt post-seizure hearing to adjudicate the validity of the creditor's position. In *Finberg*, the Third Circuit held that Pennsylvania's then procedure for garnishing a bank account violated due process because it did not give the defendant pre-garnishment notice or a prompt post-garnishment hearing to adjudicate claims of exemption from garnishment. The plaintiff analogizes the drawdown to these seizures since the drawdown also occurred without notice.

■ We cannot accept the plaintiff's statutory-entitlement theory of property rights. For a statutory entitlement to be a property interest, the right has to have already been established, not conditioned on accepting the claimant's version of events. As the Court exemplified in *American Manufacturers Mutual Ins. Co.*, *supra*, —— U.S. at ——, 119 S.Ct. at 990, 143 L.Ed.2d at 150, such a right would be like the right to continued receipt of welfare benefits, citing *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), or the right to continued receipt of social security benefits, citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In both of those examples, the right to benefits was unquestioned and the only issue was whether benefits could be cut off without due process.

■ Here, in contrast, the plaintiff is basing his state-law entitlements on his mere assertion, not yet established, that he has completed all the improvements required by the Plan. Unliquidated state-law claims arising from that assertion, the right to prompt release from the letter of credit and the right not to have any of his money used except for improvements to the development, are not property rights. Instead of a federal cause of action, the plaintiff's remedy to vindicate these rights is to pursue his other claimed right, his state-law right to contest Township action in regard to the development.

■ We also disagree with the plaintiff's assertion that the money he paid the bank to cover the drawdown is a property interest protectable in these circumstances. The Township did not simply seize the $55,495.00 from the plaintiff's bank account or his wallet. It exercised its right under the letter of credit to draw down this amount. Hence, any property interest the plaintiff had arose from contract. *See Rappaport Family Partnership, supra,* (a transaction involving a letter of credit encompasses three contracts, including a contract between the bank and its customer concerning the letter of credit and the letter of credit itself obligating the bank to pay the beneficiary). *See also A. Aiudi & Sons, supra,* 862 F.Supp. at 742 (the plaintiff's claim that the defendant improperly called the letter of credit is really one for breach of contract; *Union Pacific Railroad Co., supra,* 958 F.Supp. at 1294 (*A. Aiudi & Sons* cited with approval).

■ Unfortunately for the plaintiff, the Third Circuit has held that rights arising from contract generally are not property rights protectable under the due process clause. *See Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir. 1991). In *Unger,* the Third Circuit concluded that the due process clause protects only two types of contracts with the state: (1) a contract conferring a protected status; and (2) a contract which can be terminated only for cause. 928 F.2d at 1399. *See also Sanguigni v. Pittsburgh Board of Public Education,* 968 F.2d 393, 401 (3d Cir.1992) ("In *Unger* ... we noted that only two types of contracts have been found to be property protected by the Fourteenth Amendment. The first is a contract that confers a protected status ... The second is a contract explicitly providing that it may be terminated only for cause.").

Neither one of these categories applies to the plaintiff. The letter of credit confers no protected status on him. Nor is it a contract that is terminable only for cause. Thus, we reject the procedural due process claim.

The plaintiff's reliance on *Jordan* and *Finberg* is misplaced. As noted, both of those cases dealt with the notice required before executing on judgments, obtained either by confession or by default, when there had been no agreement by the defendant to waive notice. In the instant case, the Township was not executing on a judgment and was not seizing anything. As the defendants argue, it was merely enforcing a contractual right by which the plaintiff had explicitly agreed that the Township could demand payment on a letter of credit.

The plaintiff has attempted to distinguish *A. Aiudi & Sons* and *Union Pacific Railroad,* along with a third case that rejected a due process claim in connection with a letter of credit, *Krilich v. Village of Long Grove,* 1995 WL 628421 (N.D.Ill.), by arguing that these cases did not deal with statutory entitlements nor were they decided in states with an expressed policy, as Pennsylvania now has after *Jordan* in its rules of procedure, of requiring pre-seizure notice and hearing before executing on a judgment. As we decided above, the plaintiff has no statutory entitlements cognizable in this case and *Jordan* does not apply here.

As an alternative argument against the procedural due process claim, the defendants assume that the plaintiff has a property interest but argue that the three-part *Mathews* test for determining what process is required is satisfied here by postdeprivation remedies. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). They also rely on *A. Aiudi & Sons* and *Union Pacific Railroad* where the courts held that postdeprivation process was sufficient. Disagreeing, the plaintiff argues that the *Mathews* test requires some form of predeprivation notice and opportunity to be heard. Under the *Mathews* test:

we must weigh the importance of the interest of which the plaintiff is being deprived, the extent, if any, to which the particular procedure contended for will

reduce the risk of an erroneous deprivation, and the burden that would be imposed upon the government if that predeprivation process were required. *Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir.1989); *Vartan v. Sobolevitch,* 783 F.Supp. 911, 913 (M.D.Pa.1991) (Caldwell, J.).

We will not discuss the *Mathews* test. In our view, it is entirely inappropriate in the instant context. The Township did not draw down the $55,495.00 by virtue of some local law or on its own initiative. It did so only because the plaintiff contractually agreed that it could. In any event, we are not satisfied that the parties have adequately briefed this issue.

██ Even if we accepted the notion that due process applied to this letter of credit, we would conclude that the plaintiff has no claim here. The letter is a waiver of any due process right to notice before the drawdown. *See Jordan, supra,* 20 F.3d at 1272 (debtor can waive pre-execution notice). By its very terms, a letter of credit authorizes a beneficiary to demand that the bank issuing the letter immediately pay it a sum of money upon satisfaction of the conditions imposed by the letter. *See generally, Rappaport Family Partnership, supra. See also Krilich v. Village of Long Grove,* 1995 WL 628421, at *1 (N.D.Ill.) (in rejecting a due process challenge to a municipality's drawdown on a letter of credit, noting that the purpose of the letter is "pay now, argue later"). A letter of credit is not an extraordinary document in the business setting. It is used routinely in commercial transactions. The plaintiff is a real estate developer. He cannot now be heard to complain that the funds were taken without notice when the Township did what he explicitly agreed that it could do.

Here, the Township complied with the requirements of the letter, representing to the bank that funds were needed to complete improvements. The plaintiff disputes the accuracy of that representation, but the solution is to exercise his right under state law (which the plaintiff ac-

knowledges he has under 53 P.S. §§ 10510–10511, to contest the drawdown), not to pursue a federal civil-rights claim.

We will dismiss the procedural due process claim.

### B. *The Substantive Due Process Claim.*

The plaintiff's substantive due process claim relies on *DeBlasio v. Zoning Board of Adjustment,* 53 F.3d 592 (3d Cir.1995), in which the Third Circuit held that a person could bring such a claim when he alleges that a "decision limiting the intended land use was arbitrarily or irrationally reached," *id.* at 593, or as put more broadly later in the opinion, when the "governmental decision ... imping[ing] upon a landowner's use and enjoyment of property ... was arbitrarily or irrationally reached." *Id.* at 601 (brackets added). In *DeBlasio,* the Third Circuit ruled that a substantive due process claim could proceed when the plaintiff alleged that a zoning decision eliminating the existing business use of his property was reached because of the financial interest the secretary of the Zoning Board of Adjustment had in another property. The secretary had participated in the hearing where the Board eliminated the existing use.

The plaintiff argues that he has made similar allegations about arbitrary and irrational decision-making by the Township in connection with his development. He rests his claim on the following grounds: (1) the Township drew down $55,495.00 on the letter of credit for improvements even though these improvements had been eliminated from the final plan of development; (2) the Township took $40,000 from the plaintiff to acquire a right-of-way on the Warehime parcel but never used the money for that purpose; and (3) the Township has acted to deprive the plaintiff of the use of lots 14 and 15.

██ As the defendants point out in moving to dismiss the substantive due process

claim, the first two of these allegations are not about land-use decisions but about breaches of contract resulting in the Township allegedly obtaining funds improperly. Thus, the plaintiff cannot rely on *DeBlasio* to support a substantive due process claim on these two grounds. *DeBlasio* did speak about a governmental decision that impinged upon land use, but it was obviously talking about a land-use decision, one that substantively affected how the land would be used, not one that merely had an indirect financial connection to the plaintiff's land.

■ The third ground is also defective because it could only follow from the first two grounds and these grounds do not state a substantive due process claim. In any event, the Township had never made any land-use decision to grant the owner/developer the unconditional right to develop lots 14 and 15, only the decision to allow it to develop them after Breezewood Drive had been improved. Since Breezewood Drive had not been improved, there was nothing arbitrary about any alleged denial of the right to develop the lots.

C. *The Takings Claim.*

The plaintiff's takings claim is that the actions of the defendants have resulted in a temporary taking of lots 14 and 15 in violation of the fifth amendment because they cannot be developed without improvement to Breezewood Drive. The defendants have moved to dismiss this claim by arguing that it is not ripe since the plaintiff failed to file an action under state law seeking compensation for the taking.

■ Before a federal court can entertain a takings claim, the Supreme Court has established that the claim must be ripe, which requires the satisfaction of two conditions: (1) the owner must have obtained a final decision from those responsible for local land-use decisions regarding limitations on the use of his property; and (2) the owner must have sought compensation for the taking through available state avenues of relief. *See Williamson County Regional Planning Comm'n v. Hamilton*

*Bank*, 473 U.S. 172, 186–94, 105 S.Ct. 3108, 3116–20, 87 L.Ed.2d 126, 139–43 (1985).

■ Putting aside the issue of whether the plaintiff has obtained a final decision from local authorities, it appears that the defendants are correct on the second condition. Pursuant to 26 P.S. § 1–502(e) (Purdon 1997), Pennsylvania provides an inverse condemnation procedure for a landowner who believes he was the victim of a de facto taking. The plaintiff has not alleged that he sought compensation for the alleged taking. The takings claim is therefore not ripe and must be dismissed. *See Rocky Mountain Materials & Asphalt, Inc. v. Board of County Comm'rs*, 972 F.2d 309 (10th Cir.1992) (failure to pursue inverse condemnation action bars takings claim as unripe).

We recognize the plaintiff's argument, citing *Miller & Son Paving, Inc. v. Plumstead Township*, 552 Pa. 652, 717 A.2d 483 (1998), that he has no available remedy under state law to seek compensation for a temporary taking. However, the plaintiff has misconstrued that case. In *Miller & Son*, the Pennsylvania Supreme court did not refuse to recognize a temporary takings claim. It merely decided that the claim in that case had no merit.

IV. *Conclusion.*

Since we have decided that the plaintiff's federal claims lack substance, we will dismiss the supplemental state-law claims without prejudice to filing them in state court. *See* 28 U.S.C. § 1367(c)(3). *See also Bonenberger v. Plymouth Township*, 132 F.3d 20, 23 n. 1 (3d Cir.1997).

*ORDER*

AND NOW, this 3rd day of June, 1999, it is ordered that:

1. The defendants' motion to dismiss (doc. 17) is granted.

2. The following federal claims in the amended complaint are dismissed: the procedural due process claim (count I), the substantive due process claim (count II), and the temporary takings claim (count III).

3. The remaining claims, the state-law claims, are dismissed without prejudice to refiling them in state court.

4. The Clerk of Court shall close this file.

We will issue an appropriate order.